In re Joanne A. BOBO, Debtor.

Bankruptcy No. 99–02615.

United States Bankruptcy Court,
District of Columbia.

March 28, 2000.

W. Bronson Howell, Washington, D.C., for Debtor.

Cynthia A. Niklas, Washington, D.C., Chapter 13 Trustee.

## DECISION RE MOTION FOR RELIEF FROM THE AUTOMATIC STAY

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Countrywide Home Loan Inc. ("Countrywide") held a claim secured by a deed of trust on the debtor's principal residence. The debtor filed her petition commencing this case *after* the auctioneer's hammer had fallen at a foreclosure sale of her residence conducted pursuant to District of Columbia law under the deed of trust. The petition, however, was filed *before* Countrywide, as the successful bidder, had recorded a deed effectuating the

sale. Under the law that existed when *Flowers v. Washington Federal Savings Bank (In re Flowers)*, 94 B.R. 3 (Bankr. D.D.C.1988), was decided, cause would exist to grant Countrywide relief from the automatic stay to record the deed. But in light of the provisions of 11 U.S.C. § 1322(c)(1) enacted in 1994, the debtor contends that *Flowers* is no longer good law. Section 1322(c)(1) grants a debtor the right to cure a default with respect to a deed of trust lien on the debtor's principal residence "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." For the reasons set forth below, the court concludes that in the District of Columbia, a residence has been "sold at a foreclosure sale" within the meaning of § 1322(c)(1) when the gavel falls at the foreclosure auction sale under the deed of trust, thereby concluding the bidding and vesting the successful bidder with the right to the property contingent only on paying the purchase price and having the trustees under the deed of trust convey title pursuant to the sale. Accordingly, the court will grant Countrywide's motion for relief from the automatic stay.

Section 1322(c)(1) was enacted pursuant to § 301 of the Bankruptcy Reform Act of 1994 in an effort to clarify exactly when a debtor's right to cure a mortgage default terminates. Prior to 1994, courts were divided on this issue. As a result, courts adopted various time frames such as the date of foreclosure sale or the date of the judgment of foreclosure. *See, e.g., In re Glenn*, 760 F.2d 1428 (6th Cir.1985) (right to cure terminates upon foreclosure sale); *Matter of Roach*, 824 F.2d 1370 (3d Cir. 1987) (right to cure terminates upon entry of judgment of foreclosure); *In re Ragsdale*, 155 B.R. 578 (Bankr.N.D.Ala.1993) (right to cure terminates upon expiration of debtor's redemption rights). Section 1322(c)(1) was enacted in order to overturn the *Roach* decision which Congress viewed as antithetical to the debtor's right to a fresh start through bankruptcy. *See* House Report, 140 Cong. Rec. H10,769 (daily ed. Oct. 4, 1994).

Unfortunately, this attempt at clarification introduced new uncertainties in the statute and courts are once again divided as to the point in time that the debtor's right to cure terminates. Certain courts have determined that the language of § 1322(c)(1) is unambiguous and clearly provides that the date of the foreclosure auction is the date that the right to cure terminates.[1] Other courts also find that the language is unambiguous but instead conclude that § 1322(c)(1) provides that the right to cure must be determined by looking at when that sale is finally consummated under state law.[2] Still other courts have found that the language is ambiguous and have reached diverging conclusions as to when the right to cure terminates.[3]

---

1. *Homeside Lending, Inc. v. Denny (In re Denny)*, 242 B.R. 593, 596 (Bankr.Md.1999) (no lack of clarity in § 1322(c)(1) as drafted; cure rights terminate on actual date of auction sale); *McCarn v. WyHy Fed. Credit Union (In re McCarn)*, 218 B.R. 154, 160 (10th Cir. BAP 1998) (§ 1322(c)(1) is clear and unambiguous in establishing that date of foreclosure sale is cut-off for curing mortgage default).

2. *In re Beeman*, 235 B.R. 519, 524 (Bankr. D.N.H.1999) (§ 1322(c)(1) is unambiguous, debtor's right to cure is cut off when foreclosure process complete as determined under state law); *In re Crawford*, 217 B.R. 558, 560 (N.D.Ill.1998) (Congress's use of term "foreclosure sale" rather than "auction sale" dictates examination of state law to determine when right to cure terminates).

3. *In re Simmons*, 202 B.R. 198, 203 (Bankr. D.N.J.1996) (most common sense reading of § 1322(c)(1) is that the right to cure terminates at properly conducted auction sale); *In re Hric*, 208 B.R. 21 (Bankr.D.N.J.1997) (concurring with reasoning of *In re Simmons*); *In re Tomlin*, 228 B.R. 916 (Bankr.E.D.Ark.1999) (right to cure terminates upon recordation of deed); *In re Christian v. Citibank*, 214 B.R. 352 (N.D.Ill.1997) (right to cure terminates upon entry of order confirming sale); *In re Ross*, 191 B.R. 615 (Bankr.D.N.J.1996) (right to cure terminates when sheriff delivers deed); *In re Downing*, 212 B.R. 459 (Bankr. D.N.J.1997) (right to cure terminates when sheriff delivers deed); *In re Barham*, 193 B.R. 229 (Bankr.E.D.N.C.1996) (right to cure terminates after expiration of the statutory upset bid period).

The court adopts the reasoning of *Denny*, 242 B.R. at 596–97, to conclude that the Bankruptcy Code is unambiguous with respect to the meaning of § 1322(c)(1) in the case of a District of Columbia foreclosure under a deed of trust: the right to cure terminates upon the auctioneer's declaring the highest bidder at an auction sale.

 The court will expand somewhat on the reasoning of *Denny*. First, as noted in *Hric*, 208 B.R. at 25:

> this court agrees with *Simmons* that the phrase "that is conducted in accordance with applicable nonbankruptcy law" in § 1322(c)(1) "modifies the term 'foreclosure sale' and simply requires that the sale be held in a procedurally correct manner." *Simmons*, 202 B.R. at 203. The issue therefore boils down to the meaning of the preceding phrase "sold at a foreclosure sale" in § 1322(c)(1).

Although the foreclosure process may require steps after the foreclosure sale to make that sale effective, the statute's focus is on the foreclosure sale having been conducted in accordance with applicable nonbankruptcy law, not on the subsequent steps required to give that sale effect.[4] Some courts hold that the phrase "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law" is susceptible to more than one interpretation. In their view, the phrase could refer to the actual auction sale or it could refer to the entire foreclosure process conducted under state law.[5] The court respectfully disagrees. Although the statute does not refer to the sale at auction, that is understandable because not all foreclosure sales under nonbankruptcy law occur at an auction. Compare, for example, 28 U.S.C. § 2001(a) (public sale) with 28 U.S.C. § 2001(b) (private sale with opportunity for improved offers to be made before confirmation of sale). But whatever process is used to bid up the property, the property is sold at a foreclosure sale once rights and obligations vest in an entity to acquire the property as a result of making the highest bid. The additional steps of obtaining court approval,[6] awaiting the expiration of any cure period under nonbankruptcy law,[7] paying the purchase price, and recording the deed may be necessary to consummate the sale, but that does not alter the fact that the purchaser's right to acquire the property has intervened—that the property has been sold at a foreclosure sale—to the detriment of the debtor.

 Second, the statute refers to the property being sold *at*, not *after* or *pursuant to*, a foreclosure sale. Common parlance draws a distinction between the property being "sold at a foreclosure sale" and the later consummation of that sale and satisfaction of all contingencies required to prevent defeasance of the sale (such as any required court approval of the sale, or expiration of any right of cure that exists after the sale and prior to court approval of the sale, or expiration of any right of redemption). For example, in *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 514–15, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938), the Supreme Court discussed "[t]he person whose land has been sold at foreclosure sale and now holds a right of redemption," thus viewing the foreclosure sale as distinct from the later right of

---

4. The debtor, of course, retains the protections of nonbankruptcy law regarding what steps are necessary to consummate the sale. But the existence of those required steps do not expand the debtor's § 1322(c)(1) right to cure: if the creditor proceeds to comply with those steps, the property passes to the purchaser without right of cure.

5. As explained in *Simmons*: "The modification of the term 'foreclosure sale' by the phrase 'conducted in accordance with applicable nonbankruptcy law' arguably creates ambiguity in that it is not readily apparent whether Congress intended the phrase to apply only to the event of sale, or to the entirety of the sale process, including the giving of a deed." *Simmons*, 202 B.R. 198 at 201.

6. There is no such requirement in the District of Columbia.

7. There is no such post-sale cure right in the District of Columbia.

redemption. Moreover, this interpretation of § 1322(c)(1) is appropriate in light of Congress having drawn a distinction elsewhere in the Bankruptcy Code between property being sold at a sale and the later consummation of that sale. The drawing of the distinction is found in 11 U.S.C. § 363(k) which provides:

> (k) *At a sale* under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, *if the holder* of such claim *purchases* such property, *such holder may offset* such claim *against the purchase price* of such property.

[Emphasis added.] Congress used the term "sale" as meaning the bidding process—not the later consummation of the sale—whereby the property is sold at the § 363 sale to the highest bidder. Section 363(k) contemplates that the act of purchasing the property (via being the high bidder) "at such sale" is distinct from the later act of paying the purchase price (via offsetting the secured creditor's claim against the price at which the property was sold). In other words, § 363(k) makes clear that a "sale" is the process of bidding off the property, not the later process of consummating the successful bidder's purchase of the property. Once the term "foreclosure sale" is properly construed to mean the bidding process—usually taking the form of a public auction—the phrase "sold at a foreclosure sale" connotes that the bidding has concluded with an entity purchasing the property as a result of being the highest bidder; it does not connote the later time when that purchaser consummates the sale by paying the consideration and receiving a deed transfer-ring title. Once there is a highest bidder obligated to perform (subject only to any required court approval of the sale), the property has been sold at a foreclosure sale.[8]

■ Third, the phrase "sold at a foreclosure sale" is not to be defined by state law: whether sufficient steps have been taken under state law to deem the property to have been "sold at a foreclosure sale" is a federal question. *United States v. National Bank of Commerce*, 472 U.S. 713, 727, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Although *National Bank* dealt with the question of what is "property" of the taxpayer under the federal tax lien statute, 26 U.S.C. § 6321, its reasoning applies equally to the question of when property has been "sold at a foreclosure sale" within the meaning of 11 U.S.C. § 1322(c)(1). The classification question is a matter of federal law applied to rights created by state law. Under *National Bank*, the court must look to the substance of what has transpired under state law, not merely the label that state law places on those events. *See also In re King*, 961 F.2d 1423, 1426 (9th Cir.1992) ("We examine state-created rights so that they can be translated into the bankruptcy process. We do not blindly apply state-created labels; instead we look to the substantive attributes that state law affords." [Citations omitted.]). That state law may label a foreclosure sale as not completed until some later event such as conveyance of the property or court ratification of the sale is not controlling. Federal law will determine whether what has transpired sufficed to result in the property having been "sold at a foreclosure sale" within the meaning of § 1322(c)(1). For this reason, the court questions the analysis of such decisions as *Crawford*, 217 B.R. at 560 (deferring to

8. However, if state law permits upset bids to be made after the holding of the public auction, there really has been no conclusion of the bidding as a result of the auction. The property would not be sold at a foreclosure sale until the time for upset bids has expired. *See In re Barham*, 193 B.R. 229 (Bankr. E.D.N.C.1996) (applying North Carolina stat-ute which permitted an upset bid of at least 10% more than the sale price at the auction to be made within 20 days after the sale). But this turns on whether the bidding process should be deemed concluded, not on whether the ultimate best bid has been consummated by payment and receipt of a deed.

Illinois law's determination that true sale is deemed to have occurred only on court approval of sale, not at the foreclosure sale itself, and failing to give any weight to the preposition "at" in the phrase "sold at a foreclosure sale"); and *Downing*, 212 B.R. at 465 (placing weight on state court decision finding that no true sale exists until confirmation of the sale). State law must be consulted to determine whether there have been steps that qualify as a "foreclosure sale" within the meaning of § 1322(c)(1) and to determine whether those steps comported with state law requirements. But federal law, including the policies it embraces, determines whether the state law steps suffice to result in the property having been sold "at a foreclosure sale."

■ Fourth, without a clearer signal from Congress, § 1322(c)(1) should be interpreted in a fashion that encourages confidence in the state foreclosure auction process. Interpreting § 1322(c)(1) as allowing a cure after the foreclosure sale is held would tend to depress the price obtained at foreclosure sales. *Glenn*, 760 F.2d at 1435 (allowing cure under § 1322 after the foreclosure sale "brings with it the very serious danger that bidding at the sale itself, which should be arranged so as to yield the most attractive price, will be chilled; potential bidders may be discouraged if they cannot ascertain when, if ever, their interest will become finalized."). Moreover, it would inject great uncertainty as to the obligations of the successful bidder at the foreclosure sale. For example, would state law compel the purchaser to perform if the debtor's case were dismissed three years later for a failure to make plan payments completely to cure the arrears? As the Supreme Court held in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544–45, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), a case involving a challenge to a foreclosure sale as a fraudulent conveyance:

> Federal statutes impinging upon important state interests "cannot ... be construed without regard to the implications of our dual system of government.... [W]hen the Federal Government takes over ... local radiations in the vast network of our national economic enterprise and thereby radically readjusts the balance of state and national authority, those charged with the duty of legislating [must be] reasonably explicit." ... To displace traditional state regulation in such a manner, the federal statutory purpose must be "clear and manifest[.]" Otherwise, the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law.

[Citations and footnote omitted.] The states' interest in the integrity of their foreclosure sale process, as *BFP* demonstrates, is an important interest, and this court will not interpret § 1322(c)(1) in a manner that impinges on the states' interests in the efficiency and clarity of that process—by altering the rights acquired under state law by the highest bidder at a prepetition foreclosure auction sale—absent a reasonably explicit congressional expression of intent.

Finally, if there were an ambiguity, it would be appropriate to examine the pertinent legislative history pertaining to § 1332(c)(1), but that examination supports this court's interpretation of the statute. The House Report stated:

> This section of the bill safeguards a debtor's rights in a Chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the state provides the debtor more extensive 'cure' rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.

H.R.Rep. No. 835, 103rd Cong., 2d Sess. 52 (Oct. 4, 1994), U.S.Code Cong. & Admin. News pp. 3340, 3361. The first sentence of this quote refers to "completion of a foreclosure sale" and is ambiguous as to whether that means the property being

sold at a foreclosure sale or, instead, the consummation of the sale of the property sold at the foreclosure sale. However, the second sentence of this quote illuminates the plain working of the statute: if the debtor has more extensive nonbankruptcy rights to "cure," the debtor retains that nonbankruptcy right of cure upon filing bankruptcy.[9] Thereby, the second sentence explains the use of the phrase "at least" in the first sentence: at the very least the debtor will have cure rights under § 1322(c)(1) until the foreclosure sale is held, but the debtor may have more extensive rights if nonbankruptcy law itself accords rights to cure after the foreclosure sale.

Moreover, the House Report (immediately prior to the language quoted above) criticized *Roach* (right to cure extinguished by foreclosure sale which occurs in advance of the foreclosure sale) and discussed without criticism *Glenn* (right to cure continues until foreclosure sale is held).

The House Report, accordingly, implicitly supports this court's view. Even if the House Report were ambiguous, the comments of Senator Grassley demonstrate that congress intended that the debtor's right to cure terminates once the foreclosure sale is held:

> Section 301 will preempt conflicting state laws, and permit home-owners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs.

140 Cong. Rec. S14462 (Oct. 6, 1994) (floor statement of Sen. Grassley).

### Conclusion

 Once a residence has been sold in conformance with District of Columbia law at a regularly conducted auction to the highest bidder, that purchaser possesses the equitable right to legal title upon payment of the amount bid at the auction.[10] Congress gave no indication that it intended to undo such a significant right via the enactment of § 1322(c)(1). *Accord, Denny,* 242 B.R. at 598. Pending consummation of the sale, there is no right under District of Columbia law to cure the mortgage default or to redeem the residence. Cause exists to grant relief from the automatic stay to permit Countrywide to obtain a deed for the property, to record that deed, and to take steps to acquire possession of the property.

---

**9.** The right would be part of the debtor's property that becomes property of the estate under 11 U.S.C. § 541 and would remain in the debtor's possession under 11 U.S.C. § 1306(b) pending confirmation of a plan.

**10.** As noted in *Flowers*, the debtor does continue to possess scant property rights after the auction sale, but these interests do not defeat the purchaser's rights, acquired at a properly conducted foreclosure sale, to obtain title to, and then possession of, the property.