In re Helen K. DANASKOS, Debtor.

No. 00 B 25950.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 10, 2000.

Harold Moskowitz, Chicago, IL, for Petitioners.

Thomas Holstein, Chicago, IL, for Debtor.

Elaine Jensen, Chapter 13 Trustee, Chicago, IL, for Chapter 13 Trustee.

## *MEMORANDUM OPINION*

RONALD BARLIANT, Bankruptcy Judge.

The Debtor's mortgagee foreclosed the mortgage on her residence and got a judgment ordering its sale. Paul Javaras, David Azran and Real Estate Investment Corp. (the "Buyers") made the high bid at the foreclosure sale. The agent for the selling officer awarded the Buyers a Certificate of Sale in which she certified that "I offered said premises for sale at public auction to the highest bidder for cash" and, the Buyers having made the "highest and best bid, I accordingly struck off, and sold to said bidder the [Debtor's property]." The Certificate goes on to state that it "is issued subject to confirmation of sale, at which time the holder of this Certificate of Sale will be entitled to deed." Before the sale was confirmed, however, the Debtor filed this Chapter 13 case. The Buyers now move for relief from the automatic stay so that they can proceed to the sale confirmation hearing and, if successful there, get their deed.

At the presentation of the motion the parties disputed many facts. But the foregoing facts are stipulated. They are enough for this Court. In a Chapter 13 bankruptcy case, a debtor may cure a default under a mortgage on a principal resi-

dence, and thereby reinstate the original terms of the mortgage, by making payments over time. 11 U.S.C. § 1322(b)(5).[1] But the bankruptcy code permits such a cure only "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." § 1322(c)(1). The property in question has been sold at a foreclosure sale. The automatic stay will be modified to permit the Buyers to proceed to the confirmation hearing, at which the Debtor may raise all her other arguments about the sale. If the state court finds that the sale was not conducted in accordance with Illinois law and denies confirmation, or for any reason vacates the sale, the Debtor may proceed with her chapter 13 attempt to reinstate the mortgage. If the sale is confirmed, however, the Buyers will be entitled to their deed.

The issue decided today is one this Court has decided before. In *In re Crawford* ("*Crawford I*"), 215 B.R. 990 (Bankr. N.D.Ill.1997), this Court held that under § 1322(c) a debtor's right to reinstate a residential mortgage ends when the property is sold at the sheriff's sale. But the district court reversed. Relying on an Illinois appellate court opinion that says that a foreclosure sale is not a "true sale in a legal sense" until it has been confirmed, and agreeing with two prior district court reversals of other bankruptcy judges,[2] the district court in *Crawford v. First Nationwide Mortgage Corp. (In re Crawford)* ("*Crawford II*"), 217 B.R. 558 (N.D.Ill. 1998), *rev'g*, 215 B.R. 990 (Bankr.N.D.Ill. 1997), held that until a sale is confirmed, it has not been "conducted"; a Chapter 13 debtor may therefore reinstate the mortgage even if the case is filed after the auction, so long as the auction sale has not been confirmed. Notwithstanding the de-

cisions of three district judges, this Court will adhere to its prior holding that a Debtor's right to reinstate a mortgage is cut off by the sale, and not by confirmation of that sale.

*Crawford I* explained that Congress enacted § 1322(c) to codify decisions that had allowed a debtor to cure a mortgage default until the foreclosure sale. Allowing cure post-sale, the opinion further said, is not only contrary to § 1322's plain and unambiguous language, but also misconstrues the section's legislative history. Without disagreeing with any of that reasoning, the district court reversed. Citing *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), but ignoring *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the district court in *Crawford II* felt itself "obligated to conform to" the dicta in *Citicorp Savings v. First Chicago Trust Company*, 269 Ill.App.3d 293, 300, 645 N.E.2d 1038, 1045, 206 Ill.Dec. 786, 793 (1995) that a foreclosure sale is not "complete until it has been approved" and is not a "true sale in the legal sense." *Crawford II*, 217 B.R. at 559–60. The district court read that language as determinative of "what constitutes the 'foreclosure sale'" and even went so far as to say, based solely on that dicta, that "*Citicorp* plainly says that a sale is not 'conducted in accordance with [Illinois] law' unless and until it reaches and survives the judicial confirmation date." *Id.* at 560 (alterations in the original).

In fact, *Citicorp* says no such thing. To the precise contrary, what *Citicorp* "plainly says" in its *very first sentence* is that the proceedings conducted by the sheriff at which bids are received and a receipt or certificate of sale is awarded to the highest bidder is a "sale" at which property is

---

Unless otherwise indicated, all statutory references are to the bankruptcy code, Title 11, U.S.C. § 101, et seq.

*Christian v. Citibank, F.S.B. (In re Christian)*, 214 B.R. 352 (N.D.Ill.1997), *rev'g, In re Christian*, 199 B.R. 382 (Bankr.N.D.Ill.1996); *McEwen v. Federal Nat'l Mortgage Ass'n*, 194

B.R. 594 (N.D.Ill.1996) (reversing a bankruptcy court's oral ruling). In addition, two bankruptcy courts sitting in Illinois followed the district court's view. *See In re Scheldt*, 220 B.R. 362 (Bankr.C.D.Ill.1998); *In re Jones*, 219 B.R. 1013 (Bankr.N.D.Ill.1998).

"sold". In the left-hand column below is the first sentence of the *Citicorp* opinion; in the right-hand column is the relevant language of § 1322(c):

| | |
|---|---|
| "Appellants, Peter and Sharon Bilanzic (the Bilanzics) were high bidders for residential property sold by the sheriff at a mortgage foreclosure sale." 269 Ill.App.3d at 294, 206 Ill.Dec. 786, 645 N.E.2d 1038. | "[A default under a residential mortgage may be cured] until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). |

At a confirmation hearing, the state court decides whether a foreclosure sale "was conducted in accordance with [Illinois] law." That hearing, however, is not part of the "conduct" of the sale itself; the property is "sold" at the "foreclosure sale" before the sale is confirmed, just as *Citicorp* plainly says in its first sentence.

More importantly, the holdings in *Citicorp* also directly contradict the district court's conclusion that an Illinois foreclosure sale is not "conducted" until it is confirmed. In *Citicorp*, the foreclosure court had refused to confirm a sale and entered an order vacating it on the grounds that it had been held "by mistake" because the mortgagee had agreed to continue it. 269 Ill.App.3d. at 296, 206 Ill.Dec. 786, 645 N.E.2d at 1042. The foreclosure court also denied the high bidders' motion to intervene. The appellate court held that the high bidders, the Bilanzics, should have been allowed to intervene as of right, and that in any event they had standing to appeal. The court said, "[A] non-party may bring an appeal when that person has a direct, immediate and substantial interest in the subject matter, which would be prejudiced by judgment or benefitted by its reversal," and held that the Bilanzics had such interest by reason of their high bid. *Id.* at 299, 206 Ill.Dec. 786, 645 N.E.2d at 1044. Although a high bidder at a sheriff's sale does not acquire an interest in or a right to the land before confirmation, the court went on to say that "it cannot be disputed that the Bilanzics were adversely affected by the trial court's order or that they will have the right to the property should the sale be confirmed."

*Id.* Later, in connection with a separate issue, the court said, "While the Bilanzics certainly have an 'interest' in this litigation as the certified high bidders at the sheriff's sale, this interest evaporates upon the trial court's determination that the judicial sale will not be confirmed." *Id.* at 300, 206 Ill.Dec. 786, 645 N.E.2d at 1045.

■ *Citicorp*, therefore, recognizes that a high bidder at a foreclosure sale acquires a legally protected interest before the sale is confirmed. That much is clear from the statutory scheme. Under the Illinois Mortgage Foreclosure Law, the high bidder gets a recordable and transferrable certificate of sale upon payment of the purchase price, just as the Buyers got here. *See* 735 ILCS 5/15–1507(f). Consistent with that statutory scheme and *Citicorp* (but not consistent with the district court's *Crawford II* opinion), the agent of the selling officer in this case certified in the Certificate of Sale issued at the close of the bidding that she had "sold" the property to the Buyers, even though that Certificate was "issued subject to confirmation of sale." Motion, Ex. 1.

Moreover, the central holding in *Citicorp* further demonstrates, as *Crawford I* says, that "there is a sharp distinction between the sale and the confirmation." 215 B.R. at 995. *Citicorp* quotes the Illinois Mortgage Foreclosure Law provision that says " 'the court shall conduct a hearing to confirm the sale. Unless the court finds that … justice was not … done, the court shall then enter an order confirming the sale.' " 269 Il.App.3d at 300, 206 Ill. Dec. 786, 645 N.E.2d at 1045 (quoting 735 ILCS 5/15–1508(b)) (omissions in the original). Next, the court summarizes the proceedings below: "following the sheriff's sale, the court determined the property had been offered for sale 'by mistake' and refused to enter an order confirming the sale." *Id.* The next paragraph contains the dicta that has had such a hypnotic effect in the district court. (It is certainly dicta; one need only draw a red "X"

through the entire paragraph and then reread the opinion to see that the paragraph plays no part in the court's reasoning and is wholly unnecessary to the holdings.)

The central holding is in the next paragraph: "it would not be in the interests of justice for the court to have confirmed the sale of the property...." *Id.* at 300–301, 206 Ill.Dec. 786, 645 N.E.2d 1038. The appellate court therefore affirmed the circuit court's order explicitly as a proper exercise of its statutory authority to deny confirmation of the "sale of the property" when "justice was not done." Ignoring all of this, the district court chose to collapse "the sale of the property" and the judicial proceeding to determine whether the sale should be confirmed into a single event. The language on which the district court based its conclusion, when read in context, however, can mean no more than that the high bidder is not entitled to a deed until the sale is confirmed. It cannot mean that the sale has no independent legal significance before confirmation because that would be inconsistent with the reasoning and holdings of *Citicorp* itself.

■ Even more important than its misreading and misapplication of *Citicorp* is the district court's failure to properly distinguish between the roles of federal and state law in the resolution of this issue. Indeed, it should not be necessary to engage in the detailed analysis of state law reflected in the last few paragraphs of this opinion; that analysis is required only because the district court asked the wrong question. It simply does not matter whether a foreclosure sale is a "true sale in the legal sense," whatever that means. All that a federal court applying § 1322(c) of the bankruptcy code needs to know about state law is that new rights are created in the high bidder at the conclusion of the auction. Once it is established that state law creates rights when the gavel comes down, the federal courts should then determine whether there is a federal interest, clearly expressed by Congress, that requires the federal courts to deny or modify those state-created rights.

The federal courts, in other words, should be concentrating on § 1322(c), not state law. The undue emphasis the district court has placed on the *Citicorp* dicta obscures § 1322(c)'s focus on the conduct of a foreclosure sale. Relying on phrases like "true sale in a legal sense" to construe a federal statute's provision about a "sale conducted in accordance with applicable nonbankruptcy law" deflects from the central mission, which is to find and enforce the *intent of Congress.* Bankruptcy Judge Teel got it right in *In re Bobo,* 246 B.R. 453 (Bankr.D.D.C.2000), where he looked to state law only to determine when the purchaser at a foreclosure sale acquired a right to a deed.

> [T]he phrase 'sold at a foreclosure sale' is not to be defined by state law: whether sufficient steps have been taken under state law to deem the property to have been "sold at a foreclosure sale" is a federal question. *United States v. National Bank of Commerce,* 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) ... The classification question is a matter of federal law applied to rights created by state law. Under *National Bank,* the court must look to the substance of what has transpired under state law, not merely the label that state law places on those events.... That state law may label a foreclosure sale as not completed until some later event such as ... court ratification of the sale is not controlling.

246 B.R. at 457. *See also, McCarn v. WyHy Fed. Creditor Union (In re McCarn),* 218 B.R. 154, 159 (10th Cir. BAP 1998) (stating that it is not necessary to consider state law when determining whether a foreclosure sale had occurred because, "The language of section 1322(c)(1) is clear and unambiguous in establishing the date of the actual foreclosure sale as the cut-off for curing a mortgage default under section 1322(b)....")

■ This mode of analysis is dictated by the Supreme Court decision that should

guide the application of the federal bankruptcy code to rights created under state law. That decision is certainly not *Erie;* it is *Butner.* "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner,* 440 U.S. at 55, 99 S.Ct. at 918. The *Butner* requirement that federal courts respect state-created interests unless Congress has directed a different result was reinforced by the Supreme Court's decision in a case involving the interplay between bankruptcy principles and state mortgage foreclosure law, *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556, *reh'g denied,* 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994). There, the Court held that consideration paid at a properly-conducted foreclosure sale was conclusively "reasonably equivalent value" so as to preclude attack on the sale as a fraudulent conveyance under § 548. In so holding, the Court said:

> It is beyond question that an essential state interest is at issue here: We have said that "the general welfare of society is involved in the security of the titles to real estate" and the power to ensure that security "inheres in the very nature of [state] government." *American Land Co. v. Zeiss,* 219 U.S. 47, 60, 31 S.Ct. 200, 204, 55 L.Ed. 82 (1911). Nor is there any doubt that the interpretation urged by petitioner would have a profound effect upon that interest: The title of every piece of realty purchased at foreclosure would be under a federally created cloud.... To displace traditional state regulation in such a manner, the federal statutory purpose must be "clear and manifest," *English v. General Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990).

511 U.S. at 544, 114 S.Ct. at 1764–65.

Even if the Illinois decisions did support treating the sheriff's sale and the confirmation hearing as a single event (they do not), that would do little to help construe the meaning of the federal statute applicable here. What matters under § 1322(c) is the indisputable fact that the successful bidder at a sheriff's sale gets a legally protected interest that, in *Citicorp's* words, represents "a right to the property should the sale be confirmed." *Butner* and *BFP* require that federal courts in a bankruptcy case refrain from altering that interest in the absence of "clear and manifest" Congressional direction. The district court, however, has read § 1322(c) as authorizing the obliteration of the high bidder's state-law interest, not because of any federal interest or Congressional direction; there is no federal interest or Congressional direction that requires such a result. Rather, the district court acted as if it were deciding a question of state, not federal, law in the manner dictated (in its view) by *Erie.*

The district court's *Erie*-type approach, however, leads to a very non-*Erie* result. *Erie* requires that federal courts in diversity cases apply the same law as would be applied in the state forum in order to assure consistent results. No state court would ever decide how to apply § 1322(c); that is exclusively a federal question. Moreover, the result reached in *Crawford II* is wholly inconsistent with the text and purpose of Illinois law. The Illinois Mortgage Foreclosure Act confers on the high bidder a right to a deed, unless the foreclosure court finds some reason under that statute to deny confirmation of the sale, as happened in *Citicorp.* But in *Crawford II* the district court vitiated the high bidder's rights without finding, or even thinking about, the Illinois statutory standards. That could not have happened in an Illinois court. A mortgagor has no right under Illinois law to block confirmation of a sale and to reinstate a mortgage by promising to cure a default with installment payments over a reasonable time period; that right exists only under federal law, specifically, § 1322(b)(5). Yet, the district court

somehow managed to apply the *Erie* doctrine so as to reach a result wholly at odds with Illinois law and what would have happened in an Illinois court.[3]

 Even though the delivery of a deed is subject to judicial approval, for Congress's purposes the property at issue here has been "sold at a foreclosure sale" because it was sold at an auction held pursuant to a foreclosure judgment and the high bidder acquired a right to title upon confirmation of that sale. That is the most natural reading of the words of § 1322(c), and is most consistent with its legislative purpose. And it is the reading that avoids an unnecessary conflict between bankruptcy law and the state-created rights of buyers at foreclosure sales. Consistent with Seventh Circuit authority, it will be for the foreclosure court at the sale confirmation hearing to decide if the sale was conducted in accordance with applicable nonbankruptcy law. *See, In re Williams,* 144 F.3d 544 (7th Cir.1998) (stay properly modified to allow state court to decide status of lease under Illinois law); *In re Vitreous Steel Products, Co.,* 911 F.2d 1223 (7th Cir.1990) (issue on motion to modify stay limited to whether creditor has colorable claim to a lien; merits of that claim should be decided in other proceedings).

An appropriate order granting the motion will be entered.

### ORDER

For the reasons stated in the Memorandum Opinion of even date herewith, the Amended Motion to Lift Automatic Stay made by Paul Javaras, David Azran and Real Estate Investment Corp. is granted to the following extent: The movants may proceed in the Illinois courts to attempt to have the foreclosure sale of the property at 5837 Washington, Morton Grove, Illinois confirmed. If the sale is confirmed, the movants may take title to the property in accordance with Illinois law and the property will no longer be property of the estate in this case and will no longer be subject to the automatic stay for any purpose. If the Illinois courts deny confirmation of the sale, or otherwise vacate the sale, the stay will remain in effect to prevent the movants from taking any further action to acquire title to the property without further order of this court.

---

3. Moreover, as *Bobo* points out, the district court's result injects great uncertainty into state practice. 246 B.R. at 458. What is supposed to happen procedurally when the high bidder is not the mortgagee? Such a high bidder will have paid cash. What happens to the cash? Which court may order it refunded, the bankruptcy court or the state court, and on what authority? Or should the sheriff hold the cash against the risk that the debtor will not be able to complete the plan payments and cure the default after all? Of course, state law says nothing to say about these questions because they only arise after a federal court applies a federal statute in the way that the district court did. Federal law says nothing about these questions because Congress intended to terminate the Chapter 13 right to cure at the point at which a high bidder acquires rights at a sale.