In re Hilda Marie WATTS, Debtor.

No. 00–06791–W.

United States Bankruptcy Court, D. South Carolina.

Oct. 27, 2000.

Lola Stradford Richey, Greenville, SC, for Debtor.

L. Winston Lee, Greenville, SC, trustee.

### ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion to Terminate Automatic Stay (the "Motion") filed with the Court on August 31, 2000 by the United States of America, by and through the United States Attorney for the District of South Carolina, and on behalf of the Rural Development (the "Creditor"). The Creditor filed the Motion requesting that the automatic stay be modified pursuant to 11 U.S.C. § 362(d)[1] on the grounds that the subject property was not property of the estate pursuant to § 541; or, in the alternative, requesting that the automatic stay

be modified on the basis that there is no equity in the property. Based upon the arguments of counsel and the evidence presented at the hearing on the Motion, the Court makes the following Findings of Fact and Conclusions of Law.[2]

### FINDINGS OF FACT

1. On February 16, 2000, an action to foreclose on Hilda Marie Watt's ("Debtor") property located at 208 Honeysuckle Avenue, Laurens, South Carolina was commenced in the United States District Court for the District of South Carolina. The action was brought by the United States of America, on behalf of Rural Development, United States Department of Agriculture, to satisfy an outstanding purchase money first mortgage lien on the subject property.

2. Debtor was personally served with a copy of the Summons and Complaint on March 28, 2000, as evidenced by the return of service filed in the United States District Court on April 10, 2000. An affidavit of default against Debtor was filed on May 19, 2000.

3. A judgment of foreclosure and sale was entered in the United States District Court on May 23, 2000. The order of the District Court provided in pertinent part:

> The Marshal shall require the successful bidder at the sale, other than the plaintiff in this action, to deposit with him immediately thereafter cash or certified checks in the amount of five (5%) of his bid as guaranty of good faith and as security for compliance with his bid. The plaintiff, having waived a deficiency judgment against the defendant, the bidding will not remain open for the cus-

---

1. Further references to the Bankruptcy Code shall be by section number only.

2. The Court notes that to the extent any of the following Findings of Fact constitute Conclu-sions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

tomary period of thirty (30) days following the sale of the property.

Should any successful bidder fail to comply with his bid within ten (10) days from the date of sale, his deposit shall be forfeited, and immediately without further order, the United States Marshal shall readvertise and resell the mortgaged property on the earliest possible date thereafter, on the same terms and conditions, and at the risk of the defaulting bidder. The plaintiff may become a purchaser at the sale or any resale. Upon compliance by the purchaser with his bid, and with the terms of sale, the United States Marshal shall make, execute and deliver to the purchaser a good and sufficient fee simple deed of conveyance of the premises so sold, and the purchaser shall be let into the possession of the premises upon production of his deed. All persons holding adversely to the purchaser shall be ejected by the United States Marshal.

4. According to the Movant's Certification of Fact filed on August 31, 2000, the fair market value of the subject property at the time of sale was $34,700.00. Furthermore, according to the judgment of foreclosure and sale entered by the District Court, the amount owed on the property as of September 2, 1999 was $65,112.66, with a daily interest accrual at the rate of $10.2749.

5. In accordance with the aforesaid judgment of foreclosure and sale, the subject property was sold to T.C. Construction, Inc. on August 3, 2000.

6. Debtor filed for relief under Chapter 13 of the United States Bankruptcy Code on August 4, 2000.

7. On August 31, 2000, Creditor filed the Motion presently before the Court to request that the automatic stay be modified "to allow the United States to deliver the U.S. Marshal's Deed to the property sold

at foreclosure sale on August 3, 2000, and assist, if need be, the peaceful occupancy of the property by the successful purchaser at the aforesaid sale."

8. On September 12, 2000, Debtor filed an Objection to Motion for Relief From the Automatic Stay arguing that the sale occurring on August 3, 2000 was not fully completed; therefore, § 1322(c)(1) allowed a cure of the arrearage.

9. An Order Confirming Marshal's Report of Sale was filed with the District Court on September 6, 2000, stating that:

[P]ursuant to the Order of [the] Court [the Marshal] offered for sale at public auction, after due advertisement, the property ... and at such sale T.C. Construction, Inc. was the highest bidder .... That the aforesaid Report of the United States Marshal, and the sale made by him be, and the same is hereby, approved and confirmed, and that the said United States Marshal be, and he is hereby, authorized and directed to execute and deliver to T.C. Construction, Inc., its assigns forever, a good and sufficient deed conveying to it the property described in the Decree of Foreclosure and Sale herein.

## CONCLUSIONS OF LAW

The issues before this Court are whether the subject property constitutes property of the estate pursuant to § 541, thus entitling Creditor to relief from the automatic stay pursuant to § 362(d), or whether, as Debtor argues, Debtor has the right to cure a mortgage default under § 1322(c)(1) due to the fact that her bankruptcy petition was filed after the foreclosure sale was held but prior to the recording of the deed.

The Court will first turn to the issue of whether the subject property constitutes property of the estate. Section 541(a)(1)

provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" constitute property of the estate. This Court has previously considered the issue presently before this Court of whether in a case where a foreclosure action has preceded to sale, but the deed has yet to be properly executed, the property in question would no longer fall within the parameters of § 541(a)(1). *See, e.g. In re Holmes,* C/A No. 99–08796–W (Bankr.D.S.C.1999); *see also Commonwealth Mortgage Co. v. Brown (In re Brown),* C/A No. 87–02507–B; Adv. Pro. 87–0281–B (Bankr. D.S.C.1/28/1988); *Agripen Grain Co. v. Peacock Fruit & Cattle Co. (In re Agripen Grain Co.),* C/A No. 86–03606–D; Adv. Pro. 86–0413–D (Bankr.D.S.C.7/31/1987).

The facts of this case are similar to cases previously decided in this District. *See, e.g. In re Brown,* C/A No. 87–02507–B; Adv. Pro. 87–0281–B (Bankr. D.S.C.1/28/1988); *Agripen Grain Co. v. Peacock Fruit & Cattle Co. (In re Agripen Grain Co.),* C/A No. 86–03606–D; Adv. Pro. 86–0413–D (Bankr.D.S.C.7/31/1987). In all these cases, mortgage creditors properly commenced their foreclosure actions on their security interests, a judgment ordering the foreclosure and sale of the security interests was entered, and the property was noticed for sale and sold. However, prior to the execution of the deed, the debtors filed for relief under the Bankruptcy Code. The Court in each of these cases concluded that the property sold at a pre-petition foreclosure sale could not be deemed to constitute property of the estate.

The facts in *In re Agripen,* in particular, follow the same time-line as the factual situation presently before the Court in that the balance of the sale price in compliance with the order of foreclosure was paid following the filing of the bankruptcy petition. More specifically, in that case, North Carolina National Bank filed a Summons and Complaint on May 13, 1986 to bring an action to foreclose its first mortgage lien against the property. The foreclosure proceeding was then referred to a special referee who issued a Report and Judgment of Foreclosure and Sale on September 4, 1986. The successful bidder paid a 5% deposit of the sale price on November 5, 1986, the final day for submission of bids. Two days later, on November 7, 1986, the debtor filed for relief under Chapter 11 of the Bankruptcy Code. It was not until November 12, 1986 that the successful buyer paid the balance of the sale price in compliance with the order of foreclosure and that the special referee executed a deed of the property to the buyer. Despite the fact that the full price for the property was not remitted until following the filing of the bankruptcy petition, the Court, after analyzing the language of § 541, concluded that "[b]ecause the debtors held only bare legal title prior to the execution of the deed by the Special Referee, the grain storage facility ... should not be considered property of the estate."

The same conclusions was reached in the case of *In re Holmes.* In that case, the Court noted that " [Debtors] possess[...] neither a legal nor an equitable interest in the property once the auctioneer's hammer [falls] and the memorandum of sale [is] signed.' " *In re Holmes,* C/A No. 99–08796–W, 1999 WL 33486090 (Bankr. D.S.C.1999) (quoting *Abdelhaq v. Pflug,* 82 B.R. 807, 810 (E.D.Va.1988)). Furthermore, the Court emphasized that a pre-petition foreclosure sale terminates all legal and equitable interest in the property, regardless of when the deed is actually recorded.

Upon foreclosure on the property, a debtor is also divested of the equity of

redemption. "Equity of redemption allows the debtor to pay the indebtedness and require the secured party to reconvey the property to him free of the deed. Once the property is sold, the debtor's equitable interest is extinguished, unless he can show that there was some deficiency in the sale process." In this case, the Judgment of Foreclosure and Sale was entered and a Master's Deed was executed but not recorded prior to the filing of the Chapter 13 relief. GE Capital has satisfied the terms of the sale set forth in the Judgment of Foreclosure and Sale; thus, Debtor is left with neither equitable nor legal interest in the property. A right to cure the default is no longer available to him; all he has is bare legal title in the property.

*In re Holmes*, C/A No. 99–08796–W, 1999 WL 33486090 (Bankr.D.S.C.1999) (citations omitted).

Similarly, in this case the judgment of foreclosure and sale were entered, the public sale took place, and the successful purchaser complied with the initial terms of sale by providing a deposit guaranteeing its bid prior to the filing of the Chapter 13 relief, all actions taken prior to the filing of the bankruptcy petition. T.C. Construction, Inc. also satisfied the terms of sale set forth in the judgment of foreclosure and sale as evidenced by the Order Confirming Marshal Report of Sale. Applying the principles set forth above, Debtor had neither a legal nor equitable interest in the property sold by the U.S. Marshal after "the hammer fell," thus declaring T.C. Construction Co, Inc. to be the successful purchaser; therefore, by the petition date, the subject property no longer constituted property of the estate.

■ Debtor raises an additional issue in the Objection to the Motion. Debtor, in fact, relies upon § 1322(c)(1), enacted as part of the Bankruptcy Reform Act of 1994, to request that the Court deny the Motion and find that Debtor can cure any mortgage arrears owed to the Creditor as provided in her Chapter 13 Plan until the sale is completed under applicable non-bankruptcy law. Debtor contends that the foreclosure sale of the real estate at issue in this case is yet to be completed given the fact that the deed has not been recorded. Section 1322(c)(1) provides that "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law."

Courts interpreting this section are split in their decisions. *See, e.g.* Keith M. Lundin, *Chapter 13 Bankruptcy* 371 (2d ed. 1997–98 Supp.) ("Whatever hope there may have been that the 1994 amendment to § 1322(c)(1) would clarify the point in the deterioration of a home mortgage after which a Chapter 13 debtor cannot cure defaults, the early reported cases present a chaos of inconsistent interpretations and outcomes reminiscent of the pre–1994 mess that § 1322(c)(1) was supposed to resolve."). One line of cases has concluded that the statutory language is unambiguous and that the right to cure is cut off at the foreclosure action. *In re Bobo*, 246 B.R. 453, 455 (Bankr.D.D.C.2000); *Homeside Lending, Inc. v. Denny (In re Denny)*, 242 B.R. 593, 597 (Bankr.D.Md.1999); *In re Crawford*, 232 B.R. 92, 94–96 (Bankr. N.D.Ohio 1999). Those courts view a debtor's right to cure as ending " '(1) when the residence is sold at a foreclosure sale (2) that is conducted in accordance with applicable nonbankruptcy law.' " *In re Crawford*, 232 B.R. at 96; *see also* Lundin at 371 (" 'Sold at a foreclosure sale' has been interpreted by a majority of the reported decision to mean a 'gavel rule' the

Chapter 13 debtor's right to cure defaults expires when the auctioneer, sheriff, or other party conducting the foreclosure sale bangs the gavel on the last bid."). Other courts, however, have concluded that the debtor's right to cure extends beyond the auction date to the time where the sale is completed under applicable state law. *See, e.g. McEwen v. Federal Nat'l Mortgage Ass'n,* 194 B.R. 594, 596 (N.D.Ill. 1996) (holding that sale not completed until court order of confirmation); *In re Rambo,* 199 B.R. 747, 750–51 (Bankr.W.D.Okla. 1996) (holding that sale was not completed until court enters order confirming sale); *In re Ross,* 191 B.R. 615, 618–19 (Bankr. D.N.J.1996) (concluding that the right to cure existed until delivery of sheriff's deed to the purchaser); *In re Jaar,* 186 B.R. 148, 151–54 (Bankr.M.D.Fla.1995) (concluding that a foreclosure sale was not completed until the certificate of sale was filed with the clerk of court).

This Court adopts the reasoning of the courts that have held that the language of § 1322(c)(1) is clear and unambiguous in establishing the date of the actual foreclosure sale as the cut-off date for curing mortgage defaults. In other words, "giving due emphasis to each word in the statute, this court finds that a debtor's right to cure survives until the date the property has been sold at a sale which complies with the procedural regularity afforded under applicable law." *In re Denny,* 242 B.R. 593, 597 (Bankr.D.Md.1999); *see also In re Bobo,* 246 B.R. at 456; *In re Crawford,* 232 B.R. at 96–98. The Court acknowledges that the foreclosure process may require steps following the auction sale in order to conclude the sale and make it effective; however, "the statute's focus is on the foreclosure sale having been conducted in accordance with the applicable nonbankruptcy law, not on the subsequent steps required to give that sale effect." *In*

*re Bobo,* 246 B.R. 453, 456 (Bankr.D.C. 2000).

Precedent in this Court and this District has found that upon the falling of the gavel, the debtor is left with bare legal title; thus, the fact that the sale procedure has yet to be completed does not alter the fact that the only right that debtor is left with is the right to raise questions regarding the sale procedure. *See, e.g. Huffman v. Maryland National Bank,* 989 F.2d 493, 1993 WL 83359 (4th Cir.1993) (unpub.) (holding that, pursuant to Maryland law, bare legal title "only entitles the holder to question the adequacy of the sale price in the foreclosure ratification proceedings. Any equity in redemption ceased to exist as an interest in land on the day of the foreclosure sale."). As the court in *In re Bobo* emphasized,

> [W]hatever process is used to bid up the property, the property is sold at a foreclosure sale once rights and obligations vest in an entity to acquire the property as a result of making the highest bid. The additional steps of obtaining court approval, awaiting the expiration of any cure period under nonbankruptcy law, paying the purchase price, and recording the deed may be necessary to consummate the sale, but that does not alter the fact that the purchaser's right to acquire the property has intervened— that the property has been sold at a foreclosure sale—to the detriment of the debtor.

*In re Bobo,* 246 B.R. at 456 (footnotes omitted); *see also In re Cook,* 253 B.R. 249, 252 (Bankr.E.D.Ark.2000) ("The fact that the creditor may be required to take further steps under Arkansas law to actually obtain possession, i.e., forcibly evict the debtor, does not grant any substantive rights in the property or otherwise reduce the effect of the finality of the sale.").

In this case, the Court finds that the property in question was deemed sold at

the public sale when the gavel came down on the highest bid, in this case T.C. Construction, Inc.'s bid. Furthermore, there was no evidence presented to the court that the sale was not carried out as provided for by nonbankruptcy law.[3] Therefore, the Court concludes that, because the subject property was sold at the foreclosure sale that took place on August 3, prior to the filing of the Chapter 13 petition, Debtor does not have the right to cure the mortgage arrearage in her plan pursuant to § 1322(c)(1).

■ Furthermore, because the property in question does not constitute property of the bankruptcy estate pursuant to § 541, the Court finds that relief from the automatic stay pursuant to § 362(d) is warranted in this case. In fact, Debtor's lack of equitable and legal interest in the subject property and the fact that a foreclosure sale has already taken place in this case constitute sufficient cause to grant Creditor's Motion. *See, e.g. In re Holmes,* C/A No. 99–08796–W, 1999 WL 33486090 (Bankr.D.S.C.1999). Additionally, there

appears to me no equity in the subject property as evidence by the amount due on the debt and the value of the property reflected in Movant's Certification of Facts submitted with the Motion. Debtor did not file a Certification of Facts in response to the Motion; therefore, it appears that the value and debt owed on the property are uncontested in this matter. Furthermore, pursuant to § 362(g)(2), Debtor has the burden of proof on showing that the collateral is "necessary to an effective reorganization." Debtor, however, has made no showing that the property is essential for an effective reorganization. It is therefore,

ORDERED that the Motion to Terminate Automatic Stay filed with the Court on August 31, 2000 by the United States of America, by and through the United States Attorney for the District of South Carolina, and on behalf of the Rural Development is granted.

---

3. Although not mentioned in Debtor's Objection to Motion for Relief, at the hearing on this Motion, Debtor's attorney stated that Movant had not complied with the District Court's judgment of foreclosure and sale and with the statute governing judicial sales, found at 28 U.S.C. § 2002. The latter provides that:

> A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the country, state, or judicial district of the United States wherein the realty is situated....

Debtor's counsel also stated that the issues in this case were governed by federal law given the fact that the United States was the Movant in the matter. Due to the fact that no authority nor discussion was introduced in the Objection to Motion as to those issues, at the

hearing on the Motion the Court announced that it would give both parties' counsel an opportunity to further brief the issues and argue the applicable federal law. In her Proposed Order submitted to the Court, Debtor's counsel failed to discuss the application of 28 U.S.C. § 2002 to the facts in this case and she also failed to raise any pertinent authority regarding the differences in foreclosures involving a federal entity. On the other hand, Creditor's counsel briefly discussed the implications of 28 U.S.C. § 2002 and argued that the procedures followed in this case complied with the statutory authority. The Court finds that Debtor did not meet her burden to prove that the sale at the public auction did not comply with the federal statutory requirements. The Court's conclusion is furthered by the finding in the Order Confirming Marshal's Report of Sale filed with the District Court on September 6, 2000, that there was "due advertisement" for the public auction.