**In re Francis CRAWFORD, Debtor.**

**Bankruptcy No. 98–17777.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

April 12, 1999.

Alfred F. Nimrod, Cleveland, OH, for the debtor.

Phyllis A. Ulrich, Carlisle, McNellis & Rini, Cleveland, OH, for KeyBank National Association.

Myron E. Wasserman, Cleveland, OH, Trustee.

## MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

KeyBank National Association ("the Bank") filed a motion for relief from stay seeking authority to continue foreclosure proceedings against the residence of the Debtor Francis Crawford on the ground that her house was sold at a foreclosure sale before she filed her Chapter 13 bankruptcy case. (Docket 5). In opposition, the Debtor argues that she has the right to cure the mortgage arrearage because she filed her bankruptcy petition after the foreclosure sale, but before the state court entered an order confirming the sale. (Docket 6). Resolution of this dispute turns on the interpretation of 11 U.S.C. § 1322(c)(1), as enacted in 1994.

### JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16, 1984 by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### FACTS[1]

The Bank filed a complaint in foreclosure in the Cuyahoga County Common Pleas Court ("the state court") regarding the Debtor's residence at 14218 Caine Avenue, Cleveland, Ohio ("the Property"). The Debtor and GE Capital Mortgage Services, Inc. ("GE") were named as defendants in that action and did not file answers. On August 3, 1998, the state court entered a judgment: (1) ordering foreclosure of the Bank's mortgage; (2) granting

---

1. The parties submitted this issue on Stipulations of Fact and briefs. (Docket 10, 18, 19, 21, 22, 23, and 25).

the Bank judgment on its promissory note against the Debtor in the amount of $33,-664.76, plus interest and costs; and (3) barring the Debtor and GE from asserting any right, title, or interest in the Property.

The Cuyahoga County Sheriff's Department ("the sheriff") appraised the Property at $45,000 for purposes of the foreclosure sale. The sheriff conducted a public auction of the Property on October 13, 1998 at 10:00 a.m. SEMS Properties, Inc. ("SEMS") bid $35,000, which made it the highest bidder at the auction. The sheriff accepted the SEMS bid at about that time and SEMS paid a percentage of the purchase price as required by the terms of the auction. There are no allegations that the sale was conducted other than as provided by Ohio law.

After these events took place, and at 12:01 p.m. the same day, the Debtor filed her Chapter 13 case and delivered a certified copy of the filing to the sheriff.

On October 22, 1998, the Debtor moved in state court to stay the foreclosure proceedings. The Bank opposed the motion. The state court denied the request in an order entered on December 9, 1998. On December 11, 1998, the state court confirmed the sale and ordered the sheriff to issue a deed to SEMS. The Debtor then moved to stay or vacate the December 9, 1998 Order. On February 22, 1999, the state court entered an agreed order that provides:

> [A]ll orders and judgments made subsequent to 12:01 p.m. on October 13, 1998, are hereby vacated and set aside; further all actions undertaken by the Sheriff of Cuyahoga County in this case since such time and date are likewise vacated and set aside; and, all proceedings in this case are hereby stayed until or un-

less the automatic stay under 11 U.S.C. § 362 pertaining to Defendant, Francis Crawford . . . is terminated[.]

The parties stipulated that the sheriff does not have authority under state law to convey the Property to SEMS until the entire purchase price is paid and an order confirming the sale has been entered. There is no claim that SEMS is unable or unwilling to complete the purchase. The parties also stipulated that the Debtor has a right under Ohio law to redeem the Property after the sheriff's sale and before the sale is confirmed. The Debtor has not made any representation that she wants to redeem the Property or has the funds to do so.

The Debtor's bankruptcy filing schedules the Bank as a secured creditor with respect to the Property. Her amended Chapter 13 plan proposes to pay the pre-petition mortgage arrearage through the plan and maintain the post-petition payments on a current basis. The hearing on plan confirmation is being held in abeyance pending this decision. (Docket 13).

### ISSUE

Does the Debtor have the right to cure a mortgage default under 11 U.S.C. § 1322(c)(1) when her bankruptcy petition is filed after the foreclosure sale is held, but before the state court enters an order confirming the sale?

### DISCUSSION
#### The Positions of the Parties

A Chapter 13 debtor has the right to cure a default under a home mortgage loan in the circumstances stated in 11 U.S.C. § 1322(b). *See* 11 U.S.C. § 1322(b)(3) and (5).[2] In general, the debtor may cure the

---

**2.** (b) Subject to subsections (a) and (c) of this section, the plan may—

 * * *

(3) provide for the curing or waiving of any default;

 * * *

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any

default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due; . . . .

default within a reasonable time and may maintain payments during the case with respect to a claim on which the last payment is due after the date on which the final payment is due under the plan. 11 U.S.C. § 1322(b)(5). Section 1322(c)(1), however, limits the debtor's right to cure:

> (c) Notwithstanding subsection (b)(2)— and applicable nonbankruptcy law—
>
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]

The parties dispute the meaning of the word "sold" as used in the clause "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law ..." The statute does not provide a definition. The Bank argues that "sold" refers to the point in time when the sheriff accepted the SEMS bid at the properly conducted auction; after that event took place, the Bank believes the Debtor lost her right to cure the default. In the absence of a right to cure, the Bank says that cause exists to lift the automatic stay under 11 U.S.C. § 362 to confirm the sale and transfer the Property to SEMS. The Debtor, on the other hand, contends that a residence is not "sold" until the sale is completed under state law. Since the Debtor still has the right to redeem the Property under Ohio law, she argues the Property is not yet "sold" and she has the right to cure the default under her Plan. If there is a right to cure, then the Bank has not established cause for relief from stay.

### 11 U.S.C. § 1322(c)(1)

 Section 1322(c)(1) was added to the Bankruptcy Code under the Bankruptcy Reform Act of 1994. Pub.L. No. 103–394 § 301, 108 Stat. 4106 (Oct. 22, 1994). Before this section was enacted, the Bankruptcy Code did not expressly state when

in the course of a foreclosure proceeding a debtor lost the right to cure under 11 U.S.C. § 1322(b). The courts were divided on this issue. *See generally, Oregon v. Hurt (In re Hurt),* 158 B.R. 154 (9th Cir. BAP 1993). Some courts determined that the right to cure ended when the state court entered a foreclosure judgment. *See, for example, In re Roach,* 824 F.2d 1370 (3d Cir.1987). Most courts, however, held that the right to cure a default extended beyond the entry of the foreclosure judgment and ended only at the time of the foreclosure sale. A few courts found that even the foreclosure sale did not cut off the right to cure. *See, for example, Secretary of Veterans Affairs v. Dickerson (In re Dickerson),* 130 B.R. 110 (Bankr. S.D.Ala.1991) (court confirmed a plan that provided for a cure of arrearage and repayment of the mortgage, despite a prepetition foreclosure sale and transfer of title). The Sixth Circuit adopted a bright-line test in which the foreclosure sale ended the debtor's right to cure:

> All courts agree that at some point in the foreclosure process, the right to cure a default is irretrievably lost; however, the statute itself provides no clear cut-off point except that which the courts see fit to create ... The event we choose as the cut-off date of the statutory right to cure defaults is the sale of the mortgaged premises. We pick this in preference to other potential points in the progress of events ranging from the date of the first default to the day the redemption period expires following sale.

*Fed'l Land Bank of Louisville v. Glenn (In re Glenn),* 760 F.2d 1428, 1435 (6th Cir.1985).

Congress reacted to this split in the law by enacting new § 1322(c)(1). Courts interpreting the new legislation have, however, once again divided into two main schools of thought. Generally, one line of cases holds that the new statutory language is unambiguous and cuts off the right to cure at the foreclosure auction.

The other line of cases finds the language ambiguous, looks to the legislative history for guidance, and concludes that the debtor's right to cure extends beyond the auction date to the point in time where the sale is completed under state law. *See, for example,* the cases collected in *In re Tomlin,* 228 B.R. 916, 918 (E.D.Ark.1999). The Sixth Circuit has not yet addressed this issue.

■ The starting point for deciding the present dispute is the statute itself. *Appleton v. First Nat'l Bank of Ohio,* 62 F.3d 791, 801 (6th Cir.1995) "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). A statute is to be read in a straightforward and commonsense manner. *Rogers v. Laurain (In re Laurain),* 113 F.3d 595 (6th Cir.1997). If the statutory language is clear, the court's obligation is to enforce it without further analysis. "The court must look beyond the language of the statute, however, when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Vergos v. Gregg's Enters., Inc.,* 159 F.3d 989, 990 (6th Cir.1998). In those " 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters ...' the intention of its drafters, rather than the strict language controls." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (alteration in the original; citation omitted).

This Court agrees with the courts which find that the language of § 1322(c)(1) is not ambiguous. The statute says that a default may be cured "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]" This provision is most logically read in two parts, so that the debtor's

right to cure ends "[1] when the residence is sold at a foreclosure sale [2] that is conducted in accordance with applicable nonbankruptcy law." The Court believes that a straightforward reading of the first clause is that the cut-off point is when the gavel comes down on the last bid at the foreclosure sale. *See McCarn v. WyHy Fed. Credit Union (In re McCarn),* 218 B.R. 154 (10th Cir. BAP 1998); *In re Sims,* 185 B.R. 853 (Bankr.N.D.Ala.1995). The second clause—"that is conducted in accordance with applicable nonbankruptcy law"—qualifies "foreclosure sale." The sale must, therefore, be carried out as provided for by nonbankruptcy law. The term "nonbankruptcy law" is used in the Bankruptcy Code to refer to federal or state law, or both, depending on the context. *See Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Here, the parties agree that the reference is to Ohio law. Consequently, a debtor's right to cure ends when the sheriff accepts a bid at the foreclosure auction, so long as the sale has been properly conducted under state law.

The Court notes that the Debtor had a significant amount of time—from the August 3, 1998 foreclosure judgment to the sale held on October 13, 1998—in which to avail herself of protection under the bankruptcy laws and did not do so. At the same time, the Court is, of course, aware that the conclusion reached in this Opinion gives the Debtor a shorter time frame in which to cure her default and save her house than she might have under state law. If Congress had intended for state law to control, however, it could easily have said that a debtor has a right to cure a mortgage default until the foreclosure sale is final under state law. That is not, though, what the statute says, and if a different result is deemed preferable, that public policy decision is for Congress to make.

■ Because the statute is clear, it is not necessary to look to the legislative history to assist in the analysis. It is,

however, appropriate to consider that history to make sure that the proposed result is not demonstrably at odds with the intentions of the drafters, does not lead to an absurd result, and does not cause internal inconsistencies.

The Debtor has not argued that this result is absurd or that it leads to internal inconsistencies in the statute. The remaining question, then, is whether this result is demonstrably at odds with the intention of Congress. The legislative history includes these remarks:

> Section 1322(b)(3) and (5) of the Bankruptcy Code permit a debtor to cure defaults in connection with a chapter 13 plan, including defaults on a home mortgage loan. Until the Third Circuit's decision in *Matter of Roach,* 824 F.2d 1370 (3d Cir.1987), all of the Federal Circuit Courts of Appeal had held that such right continues at least up until the time of the foreclosure sale. *See In re Glenn,* 760 F.2d 1428 (6th Cir.1985), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Matter of Clark,* 738 F.2d 869 (7th Cir.1984), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). The Roach case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy.
>
> This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more exten-

sive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.

H.R.Rep. No. 835, 103d Cong.2d Sess. 52 (1994), 1994 U.S.C.C.A.N. 3340.

\* \* \* \* \* \*

MR. GRASSLEY: Title III of the bill will assist homeowners. Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy court [sic; should read state court] has ordered a foreclosure sale. There may be several months between the court order and the foreclosure sale. Section 301 [now § 1322(c)(1)] will preempt conflicting State laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs.

140 Cong.Rec. S14462 (daily ed. October 6, 1994) (floor statement of Sen. Grassley).

There is one point that comes through clearly in the legislative history, and that is that Congress intended for the cut-off to be later than the foreclosure judgment standard adopted in *Roach.* Application of the plain meaning of § 1322(c)(1) to conclude that a debtor's right to cure ends at the foreclosure sale is consistent with that intent. In trying to move beyond that point, however, the legislative history is contradictory: the remarks in the record reject the *Roach* position, endorse the *Glenn* case in which the rights are cut-off at the foreclosure sale regardless of state law, suggest that the debtor's rights extend at least until the sale is completed under state law and even beyond that to whatever cure period is provided by state law,[3] but also say that state law is

---

**3.** This is based on the legislative comment that "if the State provides more extensive 'cure' rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy." The use of the terms "cure" and "redemption" may be a misnomer in this context. The right to cure a mortgage default is the ability to pay

past due amounts over an extended period of time as provided in the Bankruptcy Code. In contrast, redemption is a state law remedy that generally involves saving the home by paying the amount owed to the mortgagee, plus interest and costs, in a lump sum following the foreclosure sale. *See, for example,* Ohio Rev.Code § 2329.33. A right to redeem

preempted. On this issue, the Court agrees with the conclusion reached in *In re McCarn:*

> This portion of the legislative history seems to advocate components of both approaches employed by the courts prior to passage of § 1322(c)(1) discussed above. In rejecting *Roach,* which applied a state law test, Congress cited with approval *Glenn,* the principle case espousing the bright-line test. In the next breath, Congress referred to 'completion' of the foreclosure sale, thus suggesting application of the state-law approach. Further the comments of Senator Grassley indicate that a bright-line test should be applied. See 140 Cong.Rec. S 14,462 (daily ed. Oct. 6, 1994) (floor statement of Senator Grassley). As such, the legislative history does not provide any guidance as to the intent of Congress when it enacted section 1322(c)(1)....

*In re McCarn,* 218 B.R. at 161 n. 5. As a result, the Court concludes that this decision does not produce a result demonstrably at odds with the legislative intent as to exactly when the cure rights are cut-off because that intent cannot be discerned from the record.

### The Foreclosure Proceedings

The Property was sold by the sheriff before the Debtor filed her Chapter 13 case. It is not disputed that the sale constitutes a foreclosure sale under Ohio law. *See generally* Ohio Revised Code §§ 2329.17 – 2329.45 (Sale of Lands on Execution) (Banks–Baldwin 1998). The Debtor does not dispute that the foreclosure sale was conducted in accordance with those provisions.[4] As the property was sold at a foreclosure sale conducted in accordance with Ohio law before this Chapter 13 case was filed, the Debtor does not have the right to cure the Bank's mortgage arrearage in her plan under 11 U.S.C. § 1322(c)(1).

### 11 U.S.C. § 362(d)(1)

 The Bank requests relief from the automatic stay to continue the foreclosure proceedings. Section 362(d)(1) provides for relief from stay "for cause." 11 U.S.C. § 362(d)(1). The Debtor opposes relief based solely on her ability to cure the Bank mortgage arrearage in her Chapter 13 plan. Because the Debtor does not have the right to cure her default under her plan, cause exists to lift the stay.

### CONCLUSION

The Bank's Motion for Relief From Stay is granted for cause under 11 U.S.C. § 362(d)(1). A separate judgment in accordance with this decision will be entered. A hearing on plan confirmation will also be set by separate order.

### JUDGMENT

For the reasons stated in the Memorandum of Opinion filed this same date, the Motion by Creditor KeyBank National Association for Relief from Automatic Stay is granted. (Docket 5).

IT IS SO ORDERED.

would not, then, be a right to cure. If the speaker was not using "cure" in its technical sense, then the speaker may simply have been stating that the amended language leaves intact any state redemption rights. If so, this remark would not be inconsistent with ending the cure rights at the foreclosure sale because a debtor would still be able to redeem after that date if state law so provides. *See, for example, In re White,* 216 B.R. 232 (Bankr. S.D.Ohio 1997) (holding that a debtor has the right under Ohio Revised Code § 2329.33 to redeem real property after the foreclosure sale and before the confirmation order is entered). The necessity of this footnote, however, illustrates the inconclusive nature of the legislative history.

4. The parties did make arguments regarding when a sale of property through foreclosure is final under Ohio law and the extent to which a mortgagor retains an equity of redemption. Those arguments are, however, mooted by this decision.