**Rena Mae BLAIR**

v.

**Rollin C. BROWNSON and Mary Ann Brownson.**

Supreme Court of Tennessee, at Knoxville.

Jan. 4, 2006 Session.

July 11, 2006.

---

P. Kelley Hinsley, Morristown, Tennessee, Attorney for the Appellants, Rollin C. Brownson and Mary Ann Brownson.

Lori L. Jessee, Morristown, Tennessee, for the Appellee, Rena Mae Blair.

## OPINION

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

We accepted review of this cause under Rule 11 of the Tennessee Rules of Appellate Procedure in order to determine whether an undelivered writing signed by the seller constituted, under the circumstances, a memorandum of the sale of real property sufficient to satisfy the Statute of Frauds. In the analysis necessary to determine whether a memorandum is sufficient to satisfy the Statute of Frauds, we now hold that the "party to be charged" refers to that party or parties against whom enforcement of the contract is sought. Applying that rule to the facts of the case under review, we conclude that

the memorandum is not sufficient to satisfy the Statute of Frauds. Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded to the trial court for further proceedings.

## I. Facts and Procedural History

At issue is specific performance of an oral contract to purchase an improved parcel of real property in Morristown. Ms. Rena Mae Blair, the appellee, sold the property to Ms. Leigh Farmer, and Blair retained the first mortgage. Without Blair's knowledge, Farmer obtained a second mortgage. After beginning an extensive remodeling project, Farmer abandoned the property and defaulted on both mortgages. Blair foreclosed on the first mortgage and put a "For Sale" sign in the yard. Mr. Rollin Brownson, and his wife, Ms. Mary Ann Brownson, the appellants, saw the sign and approached Blair's agent about purchasing the property. The Brownsons deposited $500.00 with the agent as earnest money for the purchase.

The parties executed a memorandum in which the Brownsons agreed to purchase the property "if there is clear title and the price with legal fees after foreclosure does not exceed $75,500.00." Rollin Brownson then learned of the lien created by the second mortgage and informed Blair's agent that the property would have to be sold at foreclosure in order to clear the title. Accordingly, the foreclosure sale was advertised as required by law.

The foreclosure sale was conducted on September 11, 2002, and the Brownsons' bid of $75,500.00 was the "highest and best" bid. The lawyer conducting the sale informed the Brownsons that due to taxes and sale expenses they would have to pay $77,642.05 for the property, regardless of the $75,500.00 bid. The Brownsons discussed the $77,642.05 figure with each other and increased their bid to $77,642.05.

They told Blair's agent that it would take a "couple of weeks" to secure financing, so a later and more convenient closing date was set.

The Brownsons then tendered a check for $7,200.00, which, when added to the $500.00 earnest money, represented approximately ten percent of the purchase price. The $7,200.00 check bore the notation "Deposit for 505 Louise, contingent upon getting financial." Blair's agent accepted the check as written.

No written contract resulted from the foreclosure sale, although Blair's agent caused a Substitute Trustee's Deed to be drafted. By September 30th, no financing had been obtained, so the scheduled closing did not occur. Later, the Brownsons learned that the property had been appraised at less than $50,000.00, an amount substantially less than their bid of $77,642.05.

In March 2003, approximately six months after the foreclosure sale, Blair filed suit for specific performance. Following a bench trial, the trial court awarded Blair specific performance and ordered the Brownsons to pay the amount of their bid—$77,642.05—less the amount previously deposited ($7,700.00). On direct appeal, the Court of Appeals affirmed the trial court's judgment.

## II. Standard of Review

Whether a memorandum made in connection with the sale of real property is sufficient to satisfy the Statute of Frauds is a question of law. *See Holms v. Johnston*, 59 Tenn. 155, 155 (Tenn.1873). On appeal, our standard of review of questions of law is de novo without a presumption of correctness afforded to the lower court's conclusions of law. *State ex rel. Pope v. U.S. Fire Ins. Co.*, 145 S.W.3d 529, 533 (Tenn.2004) (citing *State v. Williams*, 38

S.W.3d 532, 535 (Tenn.2001)). As to the findings of fact, this case was tried to the court; accordingly, the standard of review is de novo upon the record with a presumption of correctness to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn.2000) (citing Tenn. R.App. P. 13(d) and *Cross v. City of Memphis,* 20 S.W.3d 642, 644–45 (Tenn.2000)).

### III. Analysis

Section 29–2–101 of the Tennessee Code Annotated embodies the Statute of Frauds; it reads, in pertinent part:

no action shall be brought:

. . . .

(4) [u]pon any contract for the sale of lands . . .

. . . .

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

Tenn.Code Ann. 29–2–101(a) (2005). In Tennessee, it is a rule of property that the "party to be charged" in a sales contract for land is the owner of the land. *Ashley v. Preston,* 162 Tenn. 540, 39 S.W.2d 279, 280 (1931). Tennessee and Kentucky are the only states which have interpreted that phrase in such a restrictive way. *Id.*

In *Whitby v. Whitby,* this Court reasoned that the rule was designed to "protect the owners of land from being drawn into hasty or inconsiderate agreements . . . and to guard against [misunderstanding] as to the nature and extent of such agreements. . . ." 36 Tenn. 473, 478 (Tenn. 1857). The appellants note that the "adoption of this unique interpretation was obviously intended to limit its application to only a defensive tool for the protection of [the] owner of realty."

Although the appellants agree that the deed satisfies the current rule of property in Tennessee, in that the deed is signed by the owner's substitute, the appellants contend that the rule should not apply in the instant case because the underlying rationale is not applicable. In *Massey v. Hardcastle,* the Court of Appeals questioned the current interpretation of the "party to be charged" stating:

It may be argued with considerable logic that it is grossly inconsistent to require the signature of the seller to validate a sale of real estate but to enforce the same agreement against the buyer who signed no written memorandum. No authority has been found wherein a buyer was forced to specifically perform or pay damages without his signature. All authorities examined involved an effort by the buyer to force the seller to specifically perform. Nevertheless, the Legislature has declared the policy of the State in words which the Supreme Court has held to mean that only the seller's signature is necessary for a valid contract to sell land. Any change in the law or its interpretation must come from the Legislature or the Supreme Court.

753 S.W.2d 127, 137 (Tenn.Ct.App.1988).

■ While we understand the *Whitby* court's rationale in trying to protect owners of property, we are drawn to the rationale expressed by the *Massey* court. The "party to be charged" is, generally, the individual against whom the contract is sought to be enforced, whether seller or purchaser. 37 C.J.S. Frauds, Statute of § 132 (2005). Under the minority view, construing the "party to be charged" as the owner, Blair could prevail as long as sufficient parol evidence indicated the Brownsons' acceptance. *See Black v.*

*Black,* 185 Tenn. 23, 202 S.W.2d 659, 662 (1947). While we certainly can understand this Court's apparent preference in 1857 for landowners, in modern times where a substantial portion of the population has been involved in some aspect of the transfer of real property, the need for the preference regarding landowners no longer exists. Thus, buyers and sellers should receive equal protection in the process of the sale of land so that neither stands to be unduly benefited or disproportionately burdened by the fact that the contract has not been reduced to writing. Accordingly, we overrule the interpretation announced in *Whitby* and today announce a new rule in its place that interprets "party to be charged" in the Statute of Frauds analysis to refer to the party against whom enforcement of the contract is sought. Moreover, the Legislature, since this case's institution, has modified section 29–2–101 by changing the statutory language to "the party to be charged is the party against whom enforcement of the contract is sought." This modification bolsters the conclusion we reach in the present case.

 Thus, there must be a writing signed by the Brownsons indicating their assent to purchase 505 Louise for $77,642.05. While the record does show a writing stating the deposit for this property signed by both parties and also a deed which conveys the property to the Brownsons signed by Blair's agent, we find no writing in the record signed by the Brownsons agreeing to purchase the property for $77,642.05. Therefore, we conclude that there is no writing signed by the Brownsons—the party to be charged—to satisfy the Statute of Frauds as we now interpret it. If the Legislature does not agree with this interpretation, they can explicitly state that only the owner's signature is required to satisfy the Statute of Frauds. *See*

Mich. Comp. Laws § 566.108 (1996); Minn.Stat. § 513.05 (2002); Neb.Rev.Stat. § 36–105 (2005); Utah Code Ann. § 25–5–3 (2005).

## V. Conclusion

We conclude that although the Substitute Trustee's Deed does recite the terms of the parties' prior oral agreement, the deed does not satisfy the requirements of the Statute of Frauds. We hold that the "party to be charged" is the party against whom the contract is sought to be enforced. Thus, we overrule our prior decisions to the extent that they interpret the "party to be charged" otherwise. We, therefore, reverse the judgment of the intermediate court affirming an award of specific performance, and we remand the cause to the trial court for further proceedings. The costs of this appeal are taxed to the appellee, Rena Mae Blair, and her surety, for which execution may issue if necessary.