**In re Jerry Lee LOVE, Debtor.**

**Select Portfolio Servicing, Inc., Movant,**

v.

**Jerry Lee Love, the above-named debtor, and George W. Stevenson, Standing Chapter 13 Trustee, Respondents.**

No. 06–23746–K.

United States Bankruptcy Court, W.D. Tennessee, Western Division.

Oct. 31, 2006.

---

Herbert D. Hurst, Hurst Law Firm, P.A., Memphis, TN, for Debtor.

Joel Giddens, Josh Thompson, James Bergstrom, Memphis, TN, for Select Portfolio Servicing, Inc.

Chontele A. McIntyre, Memphis, TN, Standing Chapter 13 Trustee.

## MEMORANDUM AND ORDER RE MOVANT'S "POST–SALE MOTION FOR RELIEF FROM STAY" COMBINED WITH RELATED ORDERS AND NOTICE OF THE ENTRY THEREOF

The instant proceeding before the court arises out of a contested matter styled "Post–Sale Motion for Relief from Stay" filed by the movant, Select Portfolio Servicing, Inc. ("SPS"), a creditor of the above-named chapter 13 debtor, Jerry Lee Love ("Mr.Love"). By virtue of 28 U.S.C. § 157(b)(2)(G), (A) and (O), this is a core proceeding.

The threshold issue before the court is whether Mr. Love's home *(i.e.,* his principal residence) was property of the estate under 11 U.S.C. § 541(a) at the time he commenced this chapter 13 case such that he may cure prepetition economic defaults in the manner allowed under 11 U.S.C. § 1322(b)(5), while also maintaining ongoing contractual home mortgage payments, or whether the prepetition foreclosure sale conducted by the substitute indenture trustee, Manteen, LLC, was completed or finalized prior to the commencement of the chapter 13 case, thereby divesting Mr. Love of his ownership interest in his home and his concomitant inability to cure prepetition home mortgage defaults.[1]

Based on consideration of the statements of counsel, stipulated background facts and related legal documents, and based on the chapter 13 case record as a whole, the court renders the following findings of fact and conclusions of law in accordance with FED. R. BANKR.P. 7052.

Although the parties have an honest difference of opinion regarding the ultimate judicial outcome of this core proceeding,

1. *See, e.g., In re Williams,* 247 B.R. 449, 450–51 (Bankr.E.D.Tenn.2000); *see also In re Johnson,* 213 B.R. 134 (Bankr.W.D.Tenn. 1997), *modified after reh'g,* 215 B.R. 988 (Bankr.W.D.Tenn.1997); *cf. Black v. Black,* 185 Tenn. 23, 202 S.W.2d 659, 662 (1947); *Blair v. Brownson,* 197 S.W.3d 681 (Tenn. 2006).

the relevant background facts and judicial history are not in substantial dispute and may be briefly summarized as follows. At all times relevant here Mr. Love was a Tennessee resident. SPS is the servicing agent for JP Morgan Chase Bank, the mortgagee on Mr. Love's home located at 4392 East French Market Circle, Memphis, Tennessee, which is the subject of the instant motion for relief from the stay under 11 U.S.C. § 362(d)(1) and FED. R. BANKR.P. 4001(a). This real property has served as the home of Mr. Love for the past 12 years.

On August 29, 2002, Mr. Love executed a deed of trust and deed of trust note securing payment in the principal sum of $70,400 to SouthStar Funding, LLC., regarding his home. Due to financial distress, Mr. Love subsequently defaulted under the terms of the deed of trust and deed of trust note; and on March 10, 2006, Mr. Love's account was referred to Hudnall, Cohn, & Abrams of TN, LLC, to initiate a nonjudicial home mortgage foreclosure sale under applicable Tennessee state law. The foreclosure sale was originally set for April 20, 2006, and acceleration letters were sent to Mr. Love on March 24, 2006, notifying him and any other interested parties of the scheduled nonjudicial foreclosure sale date. On March 27, 2006, an appointment of substitute trustee appointing Hudnall, Cohn, & Abrams of TN, LLC, as substitute trustee, was recorded in the records of Shelby County, Tennessee. On April 20, 2006, the nonjudicial foreclosure sale was adjourned to May 22, 2006, by oral announcement of the substitute trustee. A new appointment of substitute trustee was recorded in the public records of Shelby County on April 25, 2006, to reflect the name change of the substitute trustee to Manteen, LLC. The nonjudicial foreclosure sale was orally cried out on May 22, 2006, and the home was sold back via a permissible credit bid

to JP Morgan Chase Bank, successor in interest to Bank One, National Association, as trustee, on behalf of the holders of the ACE Securities Corp. Home Equity Loan Trust, Series 2002–HE3 Asset–Backed Pass–Through Certificates ("JP Morgan Chase") for $62,340.73.

On the day the nonjudicial foreclosure sale was orally cried out, a written memorandum of the sale was signed only by the attorney crying out the sale. The parties have stipulated that this document is the sole prepetition record of the nonjudicial foreclosure sale and the resulting credit bid that was made prior to the commencement of Mr. Love's chapter 13 case. This document contained a detailed description of the property, a handwritten notation of the amount of the highest bid by JP Morgan Chase, and the signature of the attorney crying out the sale. No other signatures were affixed to this document. This document also stated that "this sale is subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy Code...."

On May 24, 2006, Mr. Love filed the instant chapter 13 case. George W. Stevenson, Esquire is the Standing Chapter 13 Trustee. On May 25, 2006, without actual notice or knowledge of Mr. Love's chapter 13 case, the substitute trustee's deed arising out of the nonjudicial foreclosure sale was executed by Mr. Richard B. Maner of Manteen, LLC., *after* the filing of this chapter 13 case.

Mr. Love's OBF Schedule I reflects that Mr. Love has been employed at *Huey's Restaurant* as a chef for 20 years; that his gross income is $1,704 per month; and that he proposes to have $630 deducted from each bi-weekly paycheck and paid by his highly regarded local employer/corporate citizen *(Huey's)* to the chapter 13 trustee, who would act as disbursing agent

for the funds paid into the plan. Mr. Love's proposed chapter 13 plan disbursements include the ongoing contractual home mortgage payment of $637 per month and also allows for the curing of the prepetition arrearage claim to be paid at the rate of $270 per month.

Upon the commencement of the chapter 13 case, an estate was created by operation of law.[2] This estate consists of all property of the debtor, no matter where it is located or by whom it is possessed or held, and whether the property is real or personal. Property of the section 541(a) estate is a legally broad concept[3] and includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[4] In addition, the filing of the chapter 13 petition triggers the section 362(a) automatic stay of the Bankruptcy Code ("Code"), which ordinarily halts any and all actions that pertains to property of the estate, as it is defined above.[5]

The automatic stay created by section 362(a) ordinarily stops all attempts by creditors to possess, collect, recover, or create and perfect a lien in property of the estate.[6] Also, it has been said that although federal bankruptcy law determines the outer boundary of what may constitute property of the estate, it is state law that determines the "nature of a debtor's interest" in the property.[7] It is a long standing precedent that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."[8] For reasons discussed below, if in the instant case the prepetition foreclosure sale is determined to be completed or finalized under applicable nonbankruptcy law, as defined under Tennessee state law, prior to the commencement of Mr. Love's chapter 13 case, then the property, Mr. Love's home, did not become property of the estate and the prepetition default may not be cured under section 1322(b)(5) by virtue of the provisions of section 1322(c)(1) of the Code, *infra.*[9]

Furthermore, in the instant case if the nonjudicial foreclosure sale was completed or finalized prior to the commencement of the chapter 13 case, as defined by applicable Tennessee state law, Mr. Love will not be able to exercise the statutory option available under section 1322(b)(5) of the Code to cure the prepetition mortgage arrearage and remain in possession of the home. It is noted that sections 1322(b)(3) and (5) of the Code ordinarily permit a chapter 13 debtor to cure prepetition defaults in connection with home mortgage loans under chapter 13 plans.

In *In re Glenn,*[10] decided in 1985 prior to the enactment of section 1322(c)(1) of the Code, the Sixth Circuit Court of Appeals held that the chapter 13 debtor's right to cure home mortgage default loans continues at least until the time of the

---

2. 11 U.S.C. § 541(a) (2005).

3. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

4. 11 U.S.C. § 541(a)(1) (2005).

5. 11 U.S.C. § 362(a) (2005).

6. *See id.*

7. *In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d Cir.1989).

8. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

9. *In re Williams,* 247 B.R. 449, 451 (Bankr. E.D.Tenn.2000); *In re Johnson,* 213 B.R. 134 (Bankr.W.D.Tenn.1997), *modified after reh'g,* 215 B.R. 988 (Bankr.Tenn.1997).

10. 760 F.2d 1428 (6th Cir.1985), *cert. den.* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).

foreclosure sale.[11] The District Court for the Eastern District of Michigan analyzed *Glenn* succinctly in stating that:

> In deciding *Glenn,* the Sixth Circuit was deciding when a federally created right to cure under 11 U.S.C. § 1322(b) was cut off, not when a particular state's foreclosure sale was deemed to be final.[12]

Congress further addressed this issue when, in 1994, 11 U.S.C. § 1322(c)(1) was passed and enacted.[13] This section "safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least *through completion of a foreclosure sale under applicable nonbankruptcy law.*"[14] Section 1322(c) of the Code is a permissive rather than a restrictive provision.[15] Specifically, section 1322(c)(1) provides:

> a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) *until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law;* (emphasis added).

Subsection (c) of section 1322 of the Code was added by section 301 of the Bankruptcy Reform Act of 1994, Pub.L. 103–394, and became effective on October 22, 1994. The relevant legislative history underlying section 1322(c)(1) provides as follows:

> Section 1322(b)(3) and (5) of the Bankruptcy Code permit a debtor to cure defaults in connection with a chapter 13 plan, including defaults on a home mortgage loan. Until the Third Circuit's decision in *Matter of Roach,* 824 F.2d 1370 (3d Cir.1987), all of the Federal Circuit Courts of Appeal had held that such right continues at least up until the time of the foreclosure sale. *See In re Glenn,* 760 F.2d 1428 (6th Cir.1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Matter of Clark,* 738 F.2d 869 (7th Cir.1984), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). The Roach case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy.
>
> This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. How-

---

**11.** *See also In re Ferrell,* 175 B.R. 222 (Bankr. W.D.Tenn.1994), *rev'd.* 179 B.R. 530 (W.D.Tenn.1994) decided prior to the enactment of section 1322(c)(1); *see also* Andrew Bernstein, *Tennessee Homeowner's Post Foreclosure Auction Right to Cure Under 11 U.S.C. §§ 1322(b) and (c),* 27 U. Mem. L.Rev. 453 (Winter 1997).

**12.** *In re Agee,* 330 B.R. 561, 567 (E.D.Mich. 2005).

**13.** 11 U.S.C. § 1322(c)(1) provides as follows:

(c) Notwithstanding subsection (b)(2) and *applicable nonbankruptcy law—*

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and . . . (emphasis added)

**14.** H.R.Rep. No. 103–835, at 52 (1994) (emphasis added). *See also* H140 Cong. Rec. H10,769 (daily ed. Oct 4, 1994) (remarks of Rep. Jack Brooks).

**15.** 8 *Collier on Bankruptcy* ¶ 1322.15, p. 1322–61 (15th ed. rev.).

ever, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.... H.R.Rep. No. 103–835, at 52 (1994), U.S.Code Cong. & Admin. News 1994, pp. 3340, 3361.

More recently, in *In re Cain*,[16] the Sixth Circuit, applying applicable nonbankruptcy law *(i.e.,* Michigan state law) under the circumstances existing there, held that the debtor's home mortgage default could not be cured through the filing of a chapter 13 case and plan after the foreclosure sale, *but before expiration of the redemption period under applicable Michigan state law.* In *Cain,* the debtors filed for bankruptcy 12 days after the foreclosure sale had been cried out and the bank with the winning bid had already acquired the property subject *only* to the debtors' state law statutory right of redemption *(i.e.,* the foreclosure sale under Michigan law was complete).

■ The Sixth Circuit stated in *Cain,* 423 F.3d at pp. 619–620, in relevant part, as follows:

Under the current language of the Bankruptcy Code, a Chapter 13 plan may provide for the curing of "a default with respect to ... a lien on the debtor's principal residence ... *until such residence is sold at a foreclosure sale that is conducted in accordance with applicable non-bankruptcy law.*" 11 U.S.C. § 1322(c)(1). (Emphasis supplied.) The question presented here is whether a foreclosure sale is not a foreclosure sale for purposes of § 1322(c)(1) until the expiration of any post-sale redemption period.

The meaning of § 1322(c)(1), which took effect in 1994, is a question on which the courts have "divided into two main schools of thought." *In re Crawford,* 232 B.R. 92, 95 (Bankr. N.D.Ohio 1999).

"Generally, one line of cases holds that the new statutory language is unambiguous and cuts off the right to cure at the foreclosure auction. The other line of cases finds the language ambiguous, looks to the legislative history for guidance, and concludes that the debtor's right to cure extends beyond the auction date to the point in time where the sale is completed under state law." *Id.* at 95–96.

We agree with the courts that have held § 1322(c)(1) to be unambiguous. In our view, "a foreclosure sale" is a single, discrete event—*typically* an auction at which the highest bidder purchases the property. See *Crawford,* 232 B.R. at 96; *In re McCarn,* 218 B.R. 154, 160 (10th Cir. BAP 1998). But see *In re Beeman,* 235 B.R. 519, 525 (Bankr.D.N.H.1999) (holding that a foreclosure sale occurs "upon the completion of a *process,* and not upon the occurrence of a single event such as a foreclosure auction").

\* \* \*

We are not persuaded that the phrase "conducted in accordance with applicable non-bankruptcy law" expands the meaning of "foreclosure sale" to encompass a state-law redemption period. As we see it, this language does not more than require that the sale adhere to procedures mandated by state law. See *Crawford,* 232 B.R. at 96. *It may be that the language "indicates that Congress intended state law to be determinative" of what constitutes a "foreclosure sale," Beeman,*

---

**16.** 423 F.3d 617 (6th Cir.2005).

235 B.R. at 525, but Michigan law plainly conceives of a foreclosure sale as a discrete event that occurs at a specified time and place. See Mich. Comp. Laws §§ 600.3216, 600.3220. It is true that the deed acquired by a purchaser at a Michigan foreclosure sale does not become operative until the running of the redemption period, see §§ 600.3232 and 600.3236, but a delay in the time when the deed becomes fully effective simply does not equate to a delay in the time of the sale. (emphasis added).[17]

The language emphasized above in *Cain* is strongly relied upon by this court in holding that under applicable Tennessee state law, "the fall of the auctioneer hammer is *NOT* alone sufficient to satisfy the Statute of Frauds requirement".[18] It has been well established and settled for many years in Tennessee that the statute of frauds[19] must be satisfied before a foreclosure sale is deemed final and a binding

contract exists.[20] For example, in *In re Williams*,[21] a post-*Glenn* decision, the court stated as follows:

In *In re Johnson*, 213 B.R. 134 (Bankr.W.D.Tenn.1997), *modified after reh'g.*, 215 B.R. 988 (Bankr. W.D.Tenn. 1997), the court analyzed the finality of a foreclosure sale in Tennessee. The court explained that "[f]or the last 175 years, Tennessee has consistently required the exchange of consideration and the satisfaction of the statute of frauds before a foreclosure sale is deemed final." *Johnson* 213 B.R. at 137. Under Tennessee law, "the fall of the auctioneer's hammer is not alone sufficient to satisfy the statute of frauds requirement." *Id.* (quoting *Black v. Black,* 185 Tenn. 23, 202 S.W.2d 659, 662 (1947)). Satisfaction of the statute of frauds, as is necessary under TENN. CODE ANN. § 29-2-101 (Supp.1999), requires a writing which evidences " 'an existing and binding contract.' " *Id.*

**17.** It is also of note that *Cain* relied heavily on the language of *Crawford* which examined a judicial foreclosure auction carried out under Ohio state law, and that in the instant case the court is examining a nonjudicial foreclosure sale carried out under Tennessee state law. *See In re Crawford,* 232 B.R. 92 (Bankr. N.D.Ohio 1999).

**18.** *Black v. Black,* 185 Tenn. 23, 202 S.W.2d 659, 662 (1947)(overruled on other grounds not pertinent here by *Blair v. Brownson,* 197 S.W.3d 681 (2006)) (emphasis added). *See also In re Johnson,* 213 B.R. 134 (Bankr. W.D.Tenn.), *modified after reh'g,* 215 B.R. 988 (Bankr.W.D.Tenn.1997).

**19.** TENN.CODE ANN. 29-2-101 provides in relevant part:

**Writing required for action.—**
(a) No action shall be brought:
(1) To charge any executor or administrator upon any special promise to answer any debtor damages out of such person's own estate.
(2) To charge the defendant upon any special promise to answer for the debtor, default, or miscarriage of another person.

(3) To charge any person upon any agreement made upon consideration of marriage;
(4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year; or
(5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract;
unless the promise or agreement, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

**20.** *See In re Johnson,* 213 B.R. 134 (Bankr. W.D.Tenn.), *modified after reh'g,* 215 B.R. 988 (Bankr.W.D.Tenn.1997); *In re Bland,* 252 B.R. 133 (Bankr.W.D.Tenn.2000).

**21.** 247 B.R. 449, 451 (Bankr.W.D.Tenn.2000).

at 136 (quoting *Black*, 202 S.W.2d at 662). When the writing take the form of a deed, the "deed must be executed before the statute may be deemed satisfied." *Id.* (citing *Black*, 202 S.W.2d at 662).

Further, the *Williams* court held under the circumstances that the preparation and execution of the indenture trustee's deed satisfies the Tennessee statute of frauds.[22] However, in *Williams*, the deed was *prepared and executed prior to* the commencement of the chapter 13 case. Accordingly, the debtor's home was not property of the section 541(a) estate and the economic default on the debtor's home mortgage could not be cured as a permissive plan provision under section 1322(b)(5).

It is important to look to the recent decision of the Tennessee Supreme Court for further guidance as to the completion of an "existing and binding contract" under the Tennessee statute of frauds. In *Blair v. Brownson*,[23] the Tennessee Supreme Court held that in order to satisfy the statute of frauds, a writing must be signed by the party to be charged and that the party to be charged is the party against whom enforcement of the contract is sought.[24] The memorandum of sale here could not rise to the level of a binding contract for the sale of real property for this reason; no one other than the attorney who orally cried out the sale signed the document.[25]

This court finds under a totality of the particular facts and circumstances and applicable determinative nonbankruptcy law (*i.e.*, Tennessee state law) that the nonjudicial foreclosure sale here was not completed or finalized at the time of the filing of Mr. Love's chapter 13 case. Accordingly, Mr. Love's home was property of the section 541(a) estate at the time of the commencement of his chapter 13 case such that the automatic stay was triggered and that he may seek to cure prepetition economic defaults and provide payment of SPS's prepetition arrearage claim in the manner permitted under section 1322(b)(5) while also maintaining ongoing contractual home mortgage payments.

It is undisputed that SPS's credit bid satisfied the "exchange of consideration" requirement under the Tennessee statute of frauds by virtue of its credit bid and that the prepetition nonjudicial foreclosure sale was orally cried out in accordance with applicable Tennessee law. This court, nonetheless, finds that the applicable statute of frauds under nonbankruptcy Tennessee state law was not complied with here. As such, under Tennessee law, the nonjudicial foreclosure sale under these circumstances was not "complete" or "finalized." No prepetition memorandum or binding foreclosure sale contract or deed was created or executed here until *after* the commencement of Mr. Love's chapter 13 case when the substitute trustee deed

---

22. *Id.*, at 451. It is emphasized here that compliance with the Tennessee statute of frauds is not a purposeless statutory formality. *Compare, e.g., In re Biggs*, 377 F.3d 515 (6th Cir.2004).

23. 197 S.W.3d 681 (2006).

24. *Id.*, at 685.

25. If in this case, the proceeding were not in front of the bankruptcy court but rather a Tennessee state court on an action of the seller (*e.g.*, a bank/mortgagee) to enforce specific performance by the buyer (or even the reverse), this court is confident that under Tennessee state law, as it stands in light of *Blair*, the state court would find that the action could not stand as the action was brought prior to the execution of the trustee's deed and neither party had signed the document purporting to exhibit the sale of the property. No specific performance could be compelled here.

was executed by Richard B. Maner of Manteen, LLC. The prepetition writing presented by SPS, the memorandum of sale, does not on its face satisfy the Tennessee statute of frauds or create a binding contract in writing between the buyer and the seller, regardless if in the instant case they are the same entity, because neither party's signature was properly affixed thereto.

It is also important to note that the deed of trust executed by Mr. Love on August 29, 2002, specifically contemplates that the "Trustee shall deliver to the purchaser Trustee's *deed* conveying the Property ..." and does not contractually contemplate any other writing manifesting the transfer of the property.[26] Simply stated, the Tennessee statute of frauds, TENN. CODE ANN. 29–2–101, has not been complied with in this case as no timely writing evidencing "an existing and binding contract" was executed until *after* the commencement of Mr. Love's chapter 13 case.

Having found that Mr. Love's home is property of the section 541(a) estate, that the automatic stay was triggered, and that the prepetition economic default here may be subject to a permissible curing under section 1322(b)(5), the court will schedule a future hearing that will be the subject of a separate order and notice of hearing to determine whether Mr. Love's proposed chapter 13 plan provisions meet all the statutory requirements for confirmation under section 1325(a) and whether SPS's objection to confirmation of Mr. Love's proposed plan should be granted or denied—that is, whether Mr. Love can permissibly cure the prepetition economic defaults on his home mortgage loan and otherwise satisfy all the requirements under section 1325(a).

---

**26.** Letter filed by Joel Giddens (Deed of Trust) at 17, *SPS v. Love,* No. 06–23746 (W.D.Tenn.

Based on the foregoing,

**IT IS SO ORDERED AND NOTICE IS HEREBY GIVEN.**

Oct. 2, 2006) (emphasis added)