IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 3, 2012 Session

## ELIZABETH C. WRIGHT v. FREDERICO A. DIXON, III

**Appeal from the Chancery Court for Knox County**
**No. 173056-3     Michael W. Moyers, Chancellor**

_____

**No. E2012-00542-COA-R3-CV-FILED-NOVEMBER 29, 2012**

_____

Elizabeth C. Wright ("the Seller") filed suit against Frederico A. Dixon, III ("the Buyer") for breach of a contract to purchase real property. The contract allowed the Buyer to terminate in the event he was unable to obtain financing. Under the contract, termination was to be effective only if notice of same was "received." The Buyer claims to have sent a notice of termination through his agent by fax to the Seller. The Seller claims that she did not receive it. The trial court found that the attempted termination was ineffective because it was not received. The Buyer appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

James B. Johnson, Nashville, Tennessee, for the appellant, Frederico A. Dixon, III.

Lewis S. Howard, Jr., and Elizabeth D. Sherrod, Knoxville, Tennessee, for the appellee, Elizabeth C. Wright.

**OPINION**

I.

A.

At the heart of this dispute is a "Purchase and Sale Agreement" ("the Agreement") for the purchase and sale of real property located at 9140 Grey Point Drive, Knoxville. The

purchase price is $875,000. The Buyer deposited earnest money of $20,000. The terms of the Agreement that are pertinent to this appeal are as follows:

> This Agreement is conditioned upon Buyer's ability to obtain a loan(s) in the principal amount of 100% of the purchase price listed above . . . . In the event Buyer, having acted in good faith and in accordance with the terms below, is unable to obtain financing, *Buyer may terminate this [A]greement by providing written notice and a copy of Lender's loan denial letter.* Upon termination, Buyer is entitled to a refund of the Earnest Money. . . . .

> * * *

> Should Buyer default hereunder, the Earnest Money shall be forfeited as damages to the Seller, and Seller may sue, in contract or tort, for additional damages or specific performance of the Agreement, or both. . . . In the event that any party hereto shall file suit for breach or enforcement of this Agreement . . ., the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees.

> * * *

> Time is of the essence of this Agreement.

> * * *

> Except as otherwise provided herein, all notices and demands required or permitted hereunder shall be in writing and delivered either (1) in person, (2) by a prepaid overnight delivery service, (3) by facsimile transmission (FAX), (4) by the United States Postal Service, postage prepaid, registered or certified return receipt requested or (5) Email. *NOTICE shall be deemed to have been given as of the date and time it is actually received.* Receipt of notice by the real estate licensee or their Broker assisting a party as a client or customer shall be deemed to be notice to that party for all purposes under this Agreement, as may be amended, unless otherwise provided in writing.

(Capitalization in original; emphasis added; paragraph numbering and headings in original omitted.)

The closing date was extended by agreement of the parties to June 27, 2008, which was a Friday. The Seller was out of town on a family vacation on that date. She appointed Jill Sutton as her attorney in fact to handle the closing. After the Buyer failed to close, the Seller sold the property for a price less than the sale price under the Agreement and filed this action for damages. The case went to trial before the court sitting without a jury. After the first trial, the court found that the Buyer had failed to make reasonable efforts to obtain financing and entered a judgment in favor of the Seller awarding damages and attorney's fees. The Buyer appealed the judgment and we reversed, holding "that the evidence preponderates against the Trial Judge's finding that the [Buyer] failed to put forth reasonable efforts to obtain a loan . . . ." ***Wright v. Dixon***, No. E2010-01647-COA-R3-CV, 2011 WL 1648088 (Tenn. Ct. App. E.S., filed May 2, 2011). We remanded "for [a] determination whether the [Agreement] was properly terminated, a question which the Trial Court pretermitted." ***Id***.

On remand, the parties and the court focused on whether the Seller received written notice of termination. The Seller testified that she did not receive a one-page fax dated June 27, 2008 ("the Alleged Fax"), which the Buyer's agent, Patricia Grissom ("the Agent"), claimed to have sent to the Seller's office fax machine. The Alleged Fax contains a handwritten note stating:

> Elizabeth, The Dixons' are withdrawing from the . . . Agreement
> due to their financing falling through. Please see the Denial
> letter attached from SunTrust.

The Seller testified that, when she is absent from the office, faxes received during normal business hours are placed by administrative help in her physical office mailbox. Faxes received after office hours "would be sitting on the fax machine." The Seller did not arrive back in Knoxville from her family vacation until late Friday night. The Seller waited until early Saturday morning, June 28, to go to the office. There was no fax from the Agent either in her office mailbox or on the fax machine. On July 2, 2008, the Seller did receive a copy of the denial of credit document under a fax cover sheet misdated July 1, 2008. *The Seller testified that the first time she saw the Alleged Fax was after the first trial.*

The Agent testified that she called the Seller on June 27 and informed her that the Buyer had not been able to obtain financing and that he was terminating the Agreement. She also asked her assistant, Tessa Moore, to send the Seller a fax dated June 27, 2008, as well as the letter from SunTrust denying financing. The Agent's "personal" file contained the

-3-

Alleged Fax, with a handwritten confirmation by Tessa Moore that it was sent. The Agent testified that, when the Seller said that she did not receive the Alleged Fax she resent the denial of financing document on either July 1 or July 2. On cross-examination the Agent admitted that she had received a subpoena to appear at the first trial and bring with her all documents pertaining to the termination. The documents she produced at the first trial did not include the Alleged Fax. The Agent testified that she met with the Buyer's attorney before trial and gave him the office file. According to the Agent, it was after the first trial that she searched her *personal* files and found the Alleged Fax. The Agent testified that it was after the first trial that she realized the Seller was claiming that she did not receive the Alleged Fax. This prompted her to search her personal files.

Tessa Moore testified by deposition. In June of 2008, she worked for the Agent. Her duties were varied and included sending faxes. The fax machine that she would have used was "the one that was for the agents to use . . . in the room with the copier and all that kind of stuff." Moore testified that the fax machine in the copy room was a combination "scanner, copier, printer, all that fun stuff." The procedure that she followed to verify that faxes were correctly sent was,

> it would print out a submission report that it went through or didn't go through and if I had that then I would attach it to the fax cover sheet and stamp it faxed and date and time so . . . I knew that it was done so at a quick glance I could see that I'd faxed it. If I didn't get the submission report it would still come up on the LCD screen that it was sent successfully. And once that happened I would hit okay and I would stamp the thing faxed and put it in the file. And if I didn't get any kind of report I would call to make sure that they got it or resend it.

Moore was asked why confirmation reports from the machine are not always secured. She explained:

> Sometimes . . . , with multiple agents not everybody knows how to keep paper in it or know how to use the machine properly and they don't always work. So . . . there's not always going to be a printout. People go in a[nd] adjust settings and it will print out on the one thing and everybody just throws away the one report that shows the last 50 things that went through.

Moore was asked to elaborate on her prior testimony about the LCD screen. She testified:

-4-

I would read it.  If it said submission successful then I would . . . stamp it and go [on] to my next thing.  If I felt that it didn't take all the pages then I would resend it or I would call and [ask] did you get it? . . . so, that's how I handled things.

In a situation where she did not receive a transmission confirmation from the machine, but did receive a confirmation on the LCD screen, she would rubber stamp the document "faxed" and write in the date, time and her initials.  Moore testified on cross-examination that even if the machine-generated confirmation had been discarded, the information would, to her knowledge, be stored in the fax machine.

Moore was shown the Alleged Fax.  She identified some of the handwriting on the stamped document as her own.  The document contained the stamp she described indicating that it had been sent by fax.  In the vicinity of the stamp, she had written the date, the time, and her initials.  Moore testified that she would not have stamped the document if she had not gotten confirmation from the LCD screen that the document had been successfully transmitted.

B.

After hearing the proof, the court announced its findings from the bench.  Its findings, in pertinent part are as follows:

[T]his contract literally says that notice is to be deemed received or given when it is actually received, and it has to be given by one of the means that is provided for in the contract . . . as a written form of notice.  I don't know if we had a glitch.  I don't know what happened, but [the Seller] has testified that she did not receive this notice on the 27th, and the Court finds her testimony to be credible.  I believe she did not receive it.  I don't know why she didn't receive it, but she didn't receive it . . . . I agree with [counsel for the Seller] that by the 27th, which was the date of the closing, either the closing had to go forward or the [B]uyer had to comply with the requirements of the contract in order to terminate the contract, and for reasons the Court can't fathom, that wasn't done.  I think [counsel] is correct, this is a million dollar real estate contract, there's a whole lot of money on the line. . . . [I]t's inconceivable to me that with the means to prove that such a fax had been sent on the 27th, such as printing out the last 50 faxes that had been sent from [the

-5-

Agent's] machine or printing out the transaction log from the machine, with that much money on the line, it's inconceivable that it wouldn't have been done. . . . [S]o I don't even know if that would make a difference. Because . . . the most recent instruction from the Court of Appeals, is that this Court is to literally construe contracts as they are written, the Court does not believe that the means provided under the contract for withdrawing from the contract upon failure to receive financing have been literally complied with. There's no evidence that on the 27th, prior to the time set for the closing, that the [S]eller or her agent had received written notice of a declination of financing and of a choice to withdraw from the contract. . . . [A]lthough this Court doesn't like it very much, the Court is going to find, again, that [the Buyer] was in breach.

The court entered a judgment against the Buyer awarding damages of $36,541.55 and attorney's fees of $43,280.76. The Buyer filed a timely notice of appeal.

II.

The issues on appeal, paraphrased, are:

Whether the evidence preponderates against the finding that the Seller did not receive the fax termination documentation.

Whether the Seller waived the "time is of the essence" clause in the agreement by not being in the office to retrieve the fax on the scheduled closing date.

III.

In cases tried by the court without a jury, we review the trial court's findings of fact de novo with a presumption that the findings are correct unless the evidence preponderates to the contrary. Tenn. R. App. P. 13 (d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006). Determinations of law are reviewed de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

IV.

The Buyer argues that the evidence preponderates against the court's finding that the Seller did not receive the Alleged Fax because Moore's testimony of seeing confirmation of transmission on the LCD screen "was undisputed by [the Seller]," and, "[t]herefore, according to Ms. Moore's undisputed testimony the documents were 'actually received' by the recipient fax machine." The error of this argument is easily shown by looking at its converse from the perspective of the Seller's "undisputed" testimony that she did not receive the fax. The Buyer's argument rests on the premise that because Moore testified that she sent the fax, it must have been received. The converse of the Buyer's argument is that if the document was not received, it must not have been sent. The Seller testified that if a fax had been received, it would have been either on the office fax machine or in her office mailbox. Upon her arrival at her office on Saturday morning, she checked both places and there was no fax. The trial court specifically commented on the credibility of the Seller. The court found her credible. The trial court's determination of credibility is given great weight and will not be reversed absent "clear, concrete and convincing evidence" to the contrary. ***Tennessee Valley Kaolin Corp. v. Perry***, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974); *see also* ***Wells v. Tennessee Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999).

Arguably, had Ms. Moore been able to supply a confirmation record printed by the sending machine showing that it read the correct number of pages and transmitted that data to the number assigned to the receiving machine, we would at least have a basis for questioning the trial court's acceptance of the Seller's testimony. We agree with the trial court that, in a transaction involving a million dollar piece of property, it is "inconceivable" that if the fax had truly gone through, the Agent would not have provided the machine printed confirmation of transmission.[1] We also note that, even though the court did not specifically comment on the fact that the Agent only produced the Alleged Fax sometime after the first trial, that circumstance casts some doubt on the Agent's office record keeping. Ms. Moore did not testify that she specifically remembered sending the document. Rather, she was shown the Alleged Fax and described what her normal office procedures would have been with regard to the stamp, and her handwritten notations. We have considered the

---

[1]This court accepts certain filings by facsimile. Tenn. R. App. P. 20A(b)(4). However, the "sender bears the risk of using facsimile transmission to convey a document . . . including, without limitation, malfunction of facsimile equipment, whether the sender's or the [court's] equipment; electrical power outages; incorrectly dialed telephone numbers; or receipt of a busy signal from the [court's] facsimile telephone number." ***Id***. (c)(3). If, and only if, the sender can provide "the document printed by the sending facsimile machine stating the telephone number of the receiving machine, the number of pages sent, the transmission time and date, and an indication of any errors in transmission" the court can accept an original document for filing as if it had been received. ***Id***. (a)(5) and (c)(3).

record as a whole and hold that the evidence does not preponderate against the trial court's finding that the termination document was not received on the closing date.

The Buyer argues that the Seller waived the "time is of the essence" clause by not being at the fax machine to retrieve the Alleged Fax. Presumably, this argument would give rise to a finding of termination by and through the fax sent later on July 2, 2008. We find no merit to the Buyer's argument. It is founded entirely on the faulty argument that the Alleged Fax arrived at the Seller's machine because Ms. Moore sent it, therefore the Seller would have received the fax if she had only been in the office. We have already rejected the argument that the evidence preponderates against the finding that the Seller did not receive the Alleged Fax. In the absence of a finding that the Alleged Fax arrived at the machine, we see no merit to the argument that the Seller waived anything by not being available in the office when the Alleged Fax arrived.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Frederico A. Dixon, III. This case is remanded, pursuant to applicable law, for enforcement of the judgment and the collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE