# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 27, 2012 Session

## SULLIVAN ELECTRIC, INC. v. ROBINS & MORTON CORPORATION

**Appeal from the Chancery Court for Davidson County**
**No. 022639IV      Russell T. Perkins, Chancellor**

---

**No. M2012-00821-COA-R3-CV - Filed February 27, 2013**

---

A subcontractor on a large project in Texas sued the general contractor claiming the general contractor breached an agreement the parties made regarding claims both had against the owner of the Texas project. The parties agreed the subcontractor would be entitled to a *pro rata* share of the settlement or judgment amount if the subcontractor's claims were not itemized. The settlement agreement between the general contractor and the owner did not include an itemization of the subcontractor's claims. The subcontractor had been given a prepayment of its claim against the owner in the amount of $300,000, and applying this to the subcontractor's *pro rata* share, the general contractor determined the subcontractor was not entitled to anything more. The trial court deducted the $300,000 from the subcontractor's claim and awarded the subcontractor its *pro rata* share of the difference. Both the subcontractor and general contractor appealed, the subcontractor claiming it was not awarded enough and the general contractor claiming the subcontractor was awarded too much. We reverse the trial court's award and hold the $300,000 the subcontractor received as a prepayment was more than it was entitled to pursuant to the terms of the parties' agreement. Accordingly, the contractor did not breach its agreement, and the subcontractor was not entitled to any damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Richard McCallister Smith, Nashville, Tennessee, for the appellant, Sullivan Electric, Inc.

L. Wearen Hughes and Cecil Woods VanDevender for the appellee, Robins & Morton Corporation.

## OPINION

### I. BACKGROUND

Robins & Morton Corporation ("R&M") was the general contractor on a project involving the construction of a medical center in Texas for Mercy Hospital of Laredo, Inc. (the "Owner"). Sullivan Electric, Inc. ("Sullivan") was the subcontractor responsible for performing the electrical work. During the course of the project a dispute arose between R&M and the Owner. In November 1998 the Owner refused to pay R&M's application for a $2.8 million progress payment, which meant R&M could not pay its subcontractors, including Sullivan. R&M directed its subcontractors to stop work until the Owner made its progress payment.

With the project stalled, R&M negotiated with the Owner to find a way for the project to get back on track. R&M and the Owner reached an agreement whereby the Owner would pay the outstanding progress payments in addition to the re-mobilization and delay costs incurred by R&M and its subcontractors, including Sullivan. R&M contacted its subcontractors to determine the amount of their re-mobilization and delay costs, and Sullivan informed R&M that its costs were $300,000.[1] In reliance on this figure and the figures submitted by its other subcontractors, R&M informed the Owner that the total re-mobilization and delay costs were $3.25 million.

In February 1999 R&M and the Owner entered into an agreement whereby the Owner paid R&M the outstanding progress payments in addition to the $3.25 million to cover the subcontractors' re-mobilization and delay costs. R&M paid Sullivan its portion of the outstanding progress payments as well as $300,000 out of the $3.25 million it received from the Owner as compensation for its delay costs. R&M accepted the $3.25 million from the Owner as a loan with the understanding that R&M would later have to justify its and its subcontractors' entitlement to the money. To the extent the Owner could show R&M and its subcontractors were not entitled to the full $3.25 as delay and re-mobilization costs, R&M understood it may have to repay some or all of the $3.25 to the Owner at a later date. Sullivan was aware of the circumstances surrounding its receipt of the $300,000.

After distributing the $300,000 to Sullivan, R&M asked Sullivan for an itemized claim that R&M could present to the Owner to support and justify the $300,000 Sullivan received. In response, Sullivan submitted a claim in the amount of $529,185.68. The claim included $390,305.68 in extended overhead as well as $138,880 in claimed expenses for

---

[1] Sullivan did not demobilize from the project, so the $300,000 represented its delay costs.

circuits, a dimmer, and a fire alarm relay. A Sullivan employee explained while giving his deposition that the $529,185.68 claim was intended to justify the $300,000 Sullivan received from the $3.25 million loan.

After the hospital project was completed, R&M pursued its claim against the Owner through mediation and litigation in Texas. Sullivan submitted a claim to the mediator for $529,185.68. In its cover letter to the mediator Sullivan stated:

> We are participating in this mediation for the purpose of assisting Robins & Morton in recovering certain extended overhead costs which it has partially paid to Sullivan Electric, Inc. in the amount of $300,000.00.

R&M's claim against the Owner, on behalf of itself and its subcontractors, was in the amount of $18,632,519. R&M's claim included the $3.25 million loan that R&M asserted it should not have to pay back, and an additional $15,382,519 that included Sullivan's claim for $529,185.68. R&M made clear that when calculating the net payment due from the Owner, the total claim should be offset by the $3.25 million the Owner already paid R&M.

In the summer of 2001, during the pendency of R&M's claim against the Owner, R&M and Sullivan entered into a Settlement and Joint Prosecution Agreement (the "Agreement"). The Agreement included the following relevant provisions:

> WHEREAS, on or about September 17, 1996, Robins & Morton entered into a contract with the Mercy Regions Medical Center ("Mercy") to build the Mercy Regional Medical Center, at Laredo, Texas ("the Project");
>
> WHEREAS, Robins & Morton and Sullivan entered into a subcontract, whereby Sullivan agreed to perform certain work ("Work") on the Project as more particularly described therein (the "Subcontractor");
>
> . . . . .
>
> WHEREAS, during the performance of the Work, Sullivan also incurred extended overhead costs as a result of delays caused by various acts and omissions of the Mercy, its agents, assigns or privies;
>
> WHEREAS, Robins & Morton filed an action in Texas state court against Mercy, HKS, Inc. and Federal Insurance Company (the "Litigation");
>
> WHEREAS, Robins & Morton and Sullivan believe that their best

-3-

interests will be served and substantial litigation expenses will be saved by a settlement of the disputes or claims which exist or which might exist between them and by the joint prosecution of a combined claim;

. . . . .

NOW, THEREFORE, in consideration of the mutual promises, agreements, and understandings herein contained, and for good and valuable consideration, the receipt of which is hereby acknowledged, the Parties covenant and agree as follows:

. . . . .

3. Robins & Morton will jointly prosecute Sullivan's claim for extended overhead and other damages caused by the acts and omission of Mercy and its agents during the Project (collectively the "Sullivan Pass Through Claim") against Mercy. Robins & Morton and Sullivan also will jointly defend against any backcharges, counterclaims or cross-claims initiated by Mercy (collectively "Counterclaims").

4. In its sole and absolute discretion, Robins & Morton will select and pay for counsel to represent both parties, will coordinate and control the negotiations, mediation, arbitration or litigation, and will make all decisions in the negotiations, mediation, arbitration and/or litigation. Robins & Morton will pay all of the costs associated with the joint prosecution of the Sullivan Pass Through Claim and the joint defense of any Counterclaims against Robins & Morton and Sullivan, including discovery costs, legal fees, and consultant fees. Robins & Morton shall have the sole and absolute discretion to determine the professional services, costs, and fees necessary for the prosecution of the Sullivan Pass Through Claim and the defense against all Counterclaims.

. . . . .

6. The decision to accept or reject any settlement offer will be made by Robins & Morton in its sole and absolute discretion. The choice of forum and the decision to accept or appeal a final

award or judgment will also be made by Robins & Morton in its sole and absolute discretion.

7.   Robins & Morton shall make reasonable efforts to obtain an itemization with respect to the Sullivan Pass Through Claim as part of any final award, judgment or settlement. In the event that the final award, judgment or settlement <u>is not itemized</u> with respect to the Sullivan Pass Through Claim and any counterclaims against Sullivan, Robins & Morton <u>shall allocate a share of the final award, judgment, or settlement to Sullivan based upon a pro rata distribution of the amount of the Sullivan Pass Through Claim</u> and any Counterclaims against Sullivan, <u>as compared to the entire claims and counterclaims associated with Robins & Morton and any other subcontractor</u> of Robins & Morton that are included in the final award, judgment or settlement.

8.   Sullivan's right of recovery is limited to that amount which is recovered by Robins & Morton from Mercy, based directly on the Sullivan Pass Through Claims. . . .

9.   Robins & Morton agrees to keep Sullivan apprised of all significant developments and afford Sullivan at its expenses the opportunity to review all significant pleadings, memoranda, and other such documents relating to Sullivan's claims.

. . . . .

18.  This Agreement shall be governed and construed according to the laws of the State of Texas.

(Emphasis added.)

In April 2002 R&M and the Owner entered into a settlement agreement. R&M asked the Owner to itemize Sullivan's claim for $529,185.68, but the Owner refused. The final settlement agreement between R&M and the Owner contains no itemization of Sullivan's

claim.[2]  The settlement provides for the Owner to pay R&M $5.85 million and does not require R&M to pay back any part of the $3.25 million it was paid in 1999.  Combining the $5.85 million payment with the $3.25 million already paid, R&M's total recovery was $9.1 million.  This amount represents 48.8% of R&M's total claim of $18,632,519.

R&M did not share any part of its settlement proceeds from the Owner with Sullivan because Sullivan had already received $300,000 of its $529,185.68 claim, which was 56.7% of its claim.  Since R&M recovered only 48.8% of its claim, R&M believed Sullivan already received more than it 48.8% *pro rata* share and that Sullivan was not entitled to recover anything more pursuant to the express terms of the Agreement.

Sullivan, however, believed it was entitled to share in the settlement proceeds and filed suit against R&M in which it alleged R&M was in breach of the Agreement.  Following a two-day trial, the trial court found Sullivan was entitled to receive an additional $112,025.63 from the settlement proceeds.  The trial court wrote:

> Apart from the $300,000.00 . . . R&M did not pay Sullivan for the other aspects of Sullivan's pass through claim.  Consequently, the Court, in deference to the contract law principle that the victim of a breach need only be made whole, determines that R&M should receive credit for the $300,000.00 payment it made to Sullivan for extended overhead expenses.  The Court concludes that R&M breached the Agreement by failing to pay Sullivan its *pro rata* share of the global settlement and that R&M owes Sullivan $112,025.63[3] as its *pro rata* share of the settlement distribution under the Agreement.

## II. ISSUES ON APPEAL

Both Sullivan and R&M appealed the trial court's judgment.  R&M contends the court erred in awarding Sullivan any amount of damages because it had already received $300,000 in extended overhead payments, which is more than the *pro rata* share to which it was entitled.  Sullivan contends the trial court erred in failing to award it a larger recovery and

[2]Sullivan contends an itemization of its claim was prepared based on a document produced during discovery of this case.  However, the individual who prepared the document was not available to testify at trial.  An R&M employee testified he believed the document attempted to outline the value of Sullivan's claim, but there was no evidence suggesting the Owner knew anything about the document.  We therefore do not consider the document for any purpose in our deliberations.

[3]Sullivan's pass through claim was $529,185.68.  This claim is reduced to $229,185.68 by affording R&M the $300,000.00 credit for the payment it made to Sullivan for extended overhead.  The Court arrived at the amount due Sullivan by applying the *pro rata* percentage of 48.88% to this amount ($229,185.68). (This footnote was included in the trial court's Memorandum and Order.)

failing to award it prejudgment interest.  Sullivan also contends R&M breached the Agreement by (1) failing to represent it adequately in the mediation with the Owner and (2) failing to communicate with it during negotiations with the Owner.

## III. ANALYSIS

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise.  Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Cross v. City of Memphis*, 20 S.W.3d 642, 643-45 (Tenn. 2000).  We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

The interpretation of a written agreement is a question of law and not of fact. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).  Accordingly, our review is *de novo* with no presumption of correctness accorded to the decision of the court below.  *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005).

The Agreement specifies Texas law is to govern its interpretation.  To prove R&M breached the Agreement, Sullivan must prove (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App. 2009); *see Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App. 2006) (breach of contract occurs when one party fails or refuses to do something it has promised to do).  In Texas, as in Tennessee, courts strive to ascertain the intent of the parties as that intent is expressed in the contract.  *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).

> A written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the parol evidence rule. . . . The rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text.

*Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011).  Circumstances the courts should consider include the setting in which the contract was negotiated as well as the factors that give a context to the transaction between the parties. *Id*. (citing 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 32.7 (4th ed.

1999)); *see* RESTATEMENT (SECOND) OF CONTRACTS § 214 (1981) (agreements and negotiations prior to or contemporaneous with the adoption of a writing help establish the meaning of the writing).

The rule for measuring damages for a breach of contract is "just compensation for the loss or damage actually sustained." *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex. App. 2000). A party should be awarded neither more than less than its actual damages. *Id.* (citing *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952)).

### A. Sullivan's Share of the Settlement Proceeds

The Agreement provided that R&M and Sullivan would jointly prosecute Sullivan's claim for extended overhead and other damages caused by the acts and omission of the Owner and that R&M had the "sole and absolute discretion" to accept or reject any settlement offer. R&M submitted Sullivan's entire claim to the Owner, including the $138,880 Sullivan claimed as expenses, as it was responsible for doing. R&M submitted evidence that it made reasonable efforts to obtain an itemization with respect to Sullivan's claim as part of the settlement. However, the settlement agreement between R&M and the Owner does not include an itemization of Sullivan's claim. Thus, in accordance with the express terms of the Agreement, Sullivan's share of the settlement proceeds is limited to its *pro rata* share "as compared to the entire claims and counterclaims associated with Robins & Morton and any other subcontractor of Robins & Morton that are included in the final award, judgment or settlement."

R&M's total claim against the Owner was in the amount of $18,632,519. Its total recovery was $9.1 million, including the $3.25 million that R&M had already been paid. $9.1 million is 48.8% of $18,632,519. Since Sullivan's claim was not itemized in the settlement agreement between R&M and the Owner, Sullivan was entitled to receive only 48.8% of its $529,185.68 claim, which is $258,242.61. R&M contends that since Sullivan has already received $300,000 of its claim, it has received more than it should and is not entitled to receive anything more. Sullivan, however, asserts that it should be awarded 48.8% of its entire claim in addition to the $300,000 it has already received from the $3.25 million loan.

Sullivan does not dispute that it was paid $300,000 from the $3.25 million loan R&M received from the Owner. Sullivan understood when R&M disbursed this money that Sullivan would be required to justify its entitlement to this amount at some later time. Sullivan argues, however, that the $300,000 it received as extended overhead payments should be disregarded when computing its *pro rata* share under the Agreement. Sullivan suggests R&M received some benefit from the $300,000 Sullivan was paid because R&M did not specify to the Owner when submitting Sullivan's $529,185.68 claim that $300,000

of this amount had already been paid to Sullivan.

It is immaterial, however, whether R&M informed the Owner of this payment to Sullivan, because R&M did not attempt to collect the $3.25 million twice. In the claim submitted to the mediator R&M made clear the total claim should be offset by the $3.25 million previously paid when calculating the net payment due from the Owner. Thus, Sullivan's assertion that R&M has received some benefit from the $300,000 it paid to Sullivan has no basis, and therefore, no merit.

As the trial court found, "it is undisputed that R&M paid Sullivan $300,000 of a $390,185.68 extended overhead claim that was included in Sullivan's Pass Through Claim under the Agreement. Given that breach of contract damages are designed to make the non-breaching party whole, R&M should receive credit for the $300,000.00 it paid to Sullivan." However, for a reason that is not explained, the trial court subtracted $300,000 from Sullivan's $529,185.68 claim and awarded Sullivan 48.8% of this difference, which it calculated as $112,025.63. We find the trial court erred in awarding Sullivan this amount because Sullivan is entitled under the express terms of the Agreement to no more than its *pro rata* share of the settlement proceeds, which we calculate to be $258,242.61. Because Sullivan has already received $300,000, we conclude Sullivan is not entitled to anything more.

## B. Sullivan's Other Claims

Turning to Sullivan's other claims, we find no support in the record for Sullivan's claim that R&M breached the Agreement by failing to represent it adequately in the mediation with the Owner. R&M hired counsel to prosecute its claim against the Owner, which included Sullivan's claim as a portion of the total claim. The attorneys R&M selected did not enter an attorney-client relationship with Sullivan, but this does not mean, as Sullivan suggests, that R&M's counsel was not representing Sullivan's interests during the mediation. An R&M employee testified that R&M asked the Owner to itemize Sullivan's claim, as R&M was obligated to do under the Agreement. Because the ultimate settlement R&M reached with the Owner did not provide Sullivan with all that Sullivan hoped for does not mean R&M failed to represent Sullivan adequately. We hold R&M represented Sullivan in R&M's litigation with the Owner as it was required to do under the terms of the Agreement.[4]

---

[4]Sullivan also argues that R&M breached the Agreement by failing to hire an expert to prove Sullivan's delay and impact claim. This argument does not merit discussion other than to point out that Sullivan never submitted a delay and impact claim to R&M to pass through to the Owner.

We likewise find no support for Sullivan's assertion that R&M breached the Agreement by failing to communicate with Sullivan during its negotiations with the Owner. The record includes evidence that R&M communicated with Sullivan about Sullivan's portion of the claim that R&M submitted as part of its $18 million claim against the Owner. There is also evidence that R&M's counsel communicated with Sullivan's counsel during the course of the negotiations to provide information on settlement discussions. R&M had no obligation to provide minute by minute updates to Sullivan on the status of the negotiations leading up to R&M's decision to accept the settlement the parties ultimately reached.[5]

## IV. CONCLUSION

Sullivan has failed to prove R&M breached the Agreement or that it is entitled to any part of the settlement proceeds R&M recovered from the Owner. We therefore reverse the trial court's judgment awarding Sullivan $112,025.63. Costs of this appeal shall be assessed against Sullivan Electric, Inc., for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[5]In light of our holding reversing the trial court's damage award to Sullivan, Sullivan's prejudgment interest argument is pretermitted.